# Exhibit A

Chapter 3

H.B. No. 20

1                              AN ACT
2  relating to censorship of or certain other interference with
3  digital expression, including expression on social media platforms
4  or through electronic mail messages.
5       BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
6       SECTION 1.  The legislature finds that:
7              (1)  each person in this state has a fundamental
8  interest in the free exchange of ideas and information, including
9  the freedom of others to share and receive ideas and information;
10             (2)  this state has a fundamental interest in
11  protecting the free exchange of ideas and information in this
12  state;
13             (3)  social media platforms function as common
14  carriers, are affected with a public interest, are central public
15  forums for public debate, and have enjoyed governmental support in
16  the United States; and
17             (4)  social media platforms with the largest number of
18  users are common carriers by virtue of their market dominance.
19      SECTION 2.  Subtitle C, Title 5, Business & Commerce Code, is
20  amended by adding Chapter 120 to read as follows:
21             CHAPTER 120.  SOCIAL MEDIA PLATFORMS
22             SUBCHAPTER A.  GENERAL PROVISIONS
23      Sec. 120.001.  DEFINITIONS.  In this chapter:
24             (1)  "Social media platform" means an Internet website

1

H.B. No. 20

1  or application that is open to the public, allows a user to create
2  an account, and enables users to communicate with other users for
3  the primary purpose of posting information, comments, messages, or
4  images.  The term does not include:
5              (A)  an Internet service provider as defined by
6  Section 324.055;
7              (B)  electronic mail; or
8              (C)  an online service, application, or website:
9                   (i)  that consists primarily of news,
10 sports, entertainment, or other information or content that is not
11 user generated but is preselected by the provider; and
12                  (ii)  for which any chat, comments, or
13 interactive functionality is incidental to, directly related to, or
14 dependent on the provision of the content described by Subparagraph
15 (i).
16         (2)  "User" means a person who posts, uploads,
17 transmits, shares, or otherwise publishes or receives content
18 through a social media platform.  The term includes a person who has
19 a social media platform account that the social media platform has
20 disabled or locked.
21      Sec. 120.002.  APPLICABILITY OF CHAPTER.  (a)  This chapter
22 applies only to a user who:
23         (1)  resides in this state;
24         (2)  does business in this state; or
25         (3)  shares or receives content on a social media
26 platform in this state.
27      (b)  This chapter applies only to a social media platform

2

H.B. No. 20

1  that functionally has more than 50 million active users in the
2  United States in a calendar month.
3        Sec. 120.003.  CONSTRUCTION OF CHAPTER.  This chapter may
4  not be construed to limit or expand intellectual property law.
5              SUBCHAPTER B.  DISCLOSURE REQUIREMENTS
6        Sec. 120.051.  PUBLIC DISCLOSURES.  (a)  A social media
7  platform shall, in accordance with this subchapter, publicly
8  disclose accurate information regarding its content management,
9  data management, and business practices, including specific
10 information regarding the manner in which the social media
11 platform:
12             (1)  curates and targets content to users;
13             (2)  places and promotes content, services, and
14 products, including its own content, services, and products;
15             (3)  moderates content;
16             (4)  uses search, ranking, or other algorithms or
17 procedures that determine results on the platform; and
18             (5)  provides users' performance data on the use of the
19 platform and its products and services.
20       (b)  The disclosure required by Subsection (a) must be
21 sufficient to enable users to make an informed choice regarding the
22 purchase of or use of access to or services from the platform.
23       (c)  A social media platform shall publish the disclosure
24 required by Subsection (a) on an Internet website that is easily
25 accessible by the public.
26       Sec. 120.052.  ACCEPTABLE USE POLICY.  (a)  A social media
27 platform shall publish an acceptable use policy in a location that

H.B. No. 20

is easily accessible to a user.

(b)  A social media platform's acceptable use policy must:

(1)  reasonably inform users about the types of content allowed on the social media platform;

(2)  explain the steps the social media platform will take to ensure content complies with the policy;

(3)  explain the means by which users can notify the social media platform of content that potentially violates the acceptable use policy, illegal content, or illegal activity, which includes:

(A)  an e-mail address or relevant complaint intake mechanism to handle user complaints; and

(B)  a complaint system described by Subchapter C; and

(4)  include publication of a biannual transparency report outlining actions taken to enforce the policy.

Sec. 120.053.  BIANNUAL TRANSPARENCY REPORT.  (a) As part of a social media platform's acceptable use policy under Section 120.052, the social media platform shall publish a biannual transparency report that includes, with respect to the preceding six-month period:

(1)  the total number of instances in which the social media platform was alerted to illegal content, illegal activity, or potentially policy-violating content by:

(A)  a user complaint;

(B)  an employee of or person contracting with the social media platform; or

4

H.B. No. 20

      (C) an internal automated detection tool;

    (2) subject to Subsection (b), the number of instances in which the social media platform took action with respect to illegal content, illegal activity, or potentially policy-violating content known to the platform due to the nature of the content as illegal content, illegal activity, or potentially policy-violating content, including:

      (A) content removal;

      (B) content demonetization;

      (C) content deprioritization;

      (D) the addition of an assessment to content;

      (E) account suspension;

      (F) account removal; or

      (G) any other action taken in accordance with the platform's acceptable use policy;

    (3) the country of the user who provided the content for each instance described by Subdivision (2);

    (4) the number of coordinated campaigns, if applicable;

    (5) the number of instances in which a user appealed the decision to remove the user's potentially policy-violating content;

    (6) the percentage of appeals described by Subdivision (5) that resulted in the restoration of content; and

    (7) a description of each tool, practice, action, or technique used in enforcing the acceptable use policy.

  (b) The information described by Subsection (a)(2) must be

5

H.B. No. 20

categorized by:

 (1)  the rule violated; and

 (2)  the source for the alert of illegal content, illegal activity, or potentially policy-violating content, including:

  (A)  a government;

  (B)  a user;

  (C)  an internal automated detection tool;

  (D)  coordination with other social media platforms; or

  (E)  persons employed by or contracting with the platform.

 (c)  A social media platform shall publish the information described by Subsection (a) with an open license, in a machine-readable and open format, and in a location that is easily accessible to users.

SUBCHAPTER C.  COMPLAINT PROCEDURES

Sec. 120.101.  COMPLAINT SYSTEM.  A social media platform shall provide an easily accessible complaint system to enable a user to submit a complaint in good faith and track the status of the complaint, including a complaint regarding:

 (1)  illegal content or activity; or

 (2)  a decision made by the social media platform to remove content posted by the user.

Sec. 120.102.  PROCESSING OF COMPLAINTS.  A social media platform that receives notice of illegal content or illegal activity on the social media platform shall make a good faith effort

H.B. No. 20

1  to evaluate the legality of the content or activity within 48 hours
2  of receiving the notice, excluding hours during a Saturday or
3  Sunday and subject to reasonable exceptions based on concerns about
4  the legitimacy of the notice.
5       Sec. 120.103.  REMOVAL OF CONTENT; EXCEPTIONS.  (a) Except
6  as provided by Subsection (b), if a social media platform removes
7  content based on a violation of the platform's acceptable use
8  policy under Section 120.052, the social media platform shall,
9  concurrently with the removal:
10            (1)  notify the user who provided the content of the
11  removal and explain the reason the content was removed;
12            (2)  allow the user to appeal the decision to remove the
13  content to the platform; and
14            (3)  provide written notice to the user who provided
15  the content of:
16                 (A)  the determination regarding an appeal
17  requested under Subdivision (2); and
18                 (B)  in the case of a reversal of the social media
19  platform's decision to remove the content, the reason for the
20  reversal.
21       (b)  A social media platform is not required to provide a
22  user with notice or an opportunity to appeal under Subsection (a) if
23  the social media platform:
24            (1)  is unable to contact the user after taking
25  reasonable steps to make contact; or
26            (2)  knows that the potentially policy-violating
27  content relates to an ongoing law enforcement investigation.

7

H.B. No. 20

Sec. 120.104.  APPEAL PROCEDURES.  If a social media platform receives a user complaint on the social media platform's removal from the platform of content provided by the user that the user believes was not potentially policy-violating content, the social media platform shall, not later than the 14th day, excluding Saturdays and Sundays, after the date the platform receives the complaint:

  (1)  review the content;

  (2)  determine whether the content adheres to the platform's acceptable use policy;

  (3)  take appropriate steps based on the determination under Subdivision (2); and

  (4)  notify the user regarding the determination made under Subdivision (2) and the steps taken under Subdivision (3).

SUBCHAPTER D.  ENFORCEMENT

Sec. 120.151.  ACTION BY ATTORNEY GENERAL. (a) The attorney general may bring an action against a social media platform to enjoin a violation of this chapter.

(b)  If an injunction is granted in an action brought under Subsection (a), the attorney general may recover costs incurred in bringing the action, including reasonable attorney's fees and reasonable investigative costs.

SECTION 3.  The heading to Chapter 321, Business & Commerce Code, is amended to read as follows:

CHAPTER 321. REGULATION OF [CERTAIN] ELECTRONIC MAIL

SECTION 4.  Section 321.001, Business & Commerce Code, is amended by adding Subdivision (4-a) to read as follows:

H.B. No. 20

1 (4-a) "Malicious computer code" means an unwanted
2 computer program or other set of instructions inserted into a
3 computer's memory, operating system, or program that:
4 (A) is specifically constructed with the ability
5 to replicate itself or to affect the other programs or files in the
6 computer by attaching a copy of the unwanted program or other set of
7 instructions to one or more computer programs or files; or
8 (B) is intended to perform an unauthorized
9 process that will adversely impact the confidentiality of
10 information contained in or the integrity or availability of the
11 computer's memory, operating system, or program.
12 SECTION 5.  Subchapter B, Chapter 321, Business & Commerce
13 Code, is amended by adding Section 321.054 to read as follows:
14 Sec. 321.054.  IMPEDING ELECTRONIC MAIL MESSAGES
15 PROHIBITED.  An electronic mail service provider may not
16 intentionally impede the transmission of another person's
17 electronic mail message based on the content of the message unless:
18 (1) the provider is authorized to block the
19 transmission under Section 321.114 or other applicable state or
20 federal law; or
21 (2) the provider has a good faith, reasonable belief
22 that the message contains malicious computer code, obscene
23 material, material depicting sexual conduct, or material that
24 violates other law.
25 SECTION 6.  Section 321.105(a), Business & Commerce Code, is
26 amended to read as follows:
27 (a) In lieu of actual damages, a person injured by a

9

H.B. No. 20

violation of this chapter arising from the transmission of an unsolicited or commercial electronic mail message or by a violation of Section 321.054 may recover an amount equal to the lesser of:

 (1)  $10 for each unlawful message or each message unlawfully impeded, as applicable; or

 (2)  $25,000 for each day the unlawful message is received or the message is unlawfully impeded, as applicable.

SECTION 7.  Title 6, Civil Practice and Remedies Code, is amended by adding Chapter 143A to read as follows:

 CHAPTER 143A.  DISCOURSE ON SOCIAL MEDIA PLATFORMS

 Sec. 143A.001.  DEFINITIONS.  In this chapter:

  (1)  "Censor" means to block, ban, remove, deplatform, demonetize, de-boost, restrict, deny equal access or visibility to, or otherwise discriminate against expression.

  (2)  "Expression" means any word, music, sound, still or moving image, number, or other perceivable communication.

  (3)  "Receive," with respect to an expression, means to read, hear, look at, access, or gain access to the expression.

  (4)  "Social media platform" has the meaning assigned by Section 120.001, Business & Commerce Code.

  (5)  "Unlawful expression" means an expression that is unlawful under the United States Constitution, federal law, the Texas Constitution, or the laws of this state, including expression that constitutes a tort under the laws of this state or the United States.

  (6)  "User" means a person who posts, uploads, transmits, shares, or otherwise publishes or receives expression,

H.B. No. 20

1  through a social media platform.  The term includes a person who has
2  a social media platform account that the social media platform has
3  disabled or locked.
4         Sec. 143A.002.  CENSORSHIP PROHIBITED.  (a)  A social media
5  platform may not censor a user, a user's expression, or a user's
6  ability to receive the expression of another person based on:
7               (1)  the viewpoint of the user or another person;
8               (2)  the viewpoint represented in the user's expression
9  or another person's expression; or
10              (3)  a user's geographic location in this state or any
11 part of this state.
12        (b)  This section applies regardless of whether the
13 viewpoint is expressed on a social media platform or through any
14 other medium.
15        Sec. 143A.003.  WAIVER PROHIBITED.  (a)  A waiver or
16 purported waiver of the protections provided by this chapter is
17 void as unlawful and against public policy, and a court or
18 arbitrator may not enforce or give effect to the waiver, including
19 in an action brought under Section 143A.007, notwithstanding any
20 contract or choice-of-law provision in a contract.
21        (b)  The waiver prohibition described by Subsection (a) is a
22 public-policy limitation on contractual and other waivers of the
23 highest importance and interest to this state, and this state is
24 exercising and enforcing this limitation to the full extent
25 permitted by the United States Constitution and Texas Constitution.
26        Sec. 143A.004.  APPLICABILITY OF CHAPTER.  (a)  This chapter
27 applies only to a user who:

H.B. No. 20

1    (1)  resides in this state;

2    (2)  does business in this state; or

3    (3)  shares or receives expression in this state.

4  (b)  This chapter applies only to expression that is shared
5  or received in this state.

6  (c)  This chapter applies only to a social media platform
7  that functionally has more than 50 million active users in the
8  United States in a calendar month.

9  (d)  This chapter applies to the maximum extent permitted by
10 the United States Constitution and the laws of the United States but
11 no further than the maximum extent permitted by the United States
12 Constitution and the laws of the United States.

13 Sec. 143A.005.  LIMITATION ON EFFECT OF CHAPTER.  This
14 chapter does not subject a social media platform to damages or other
15 legal remedies to the extent the social media platform is protected
16 from those remedies under federal law.

17 Sec. 143A.006.  CONSTRUCTION OF CHAPTER.  (a)  This chapter
18 does not prohibit a social media platform from censoring expression
19 that:

20    (1)  the social media platform is specifically
21 authorized to censor by federal law;

22    (2)  is the subject of a referral or request from an
23 organization with the purpose of preventing the sexual
24 exploitation of children and protecting survivors of sexual abuse
25 from ongoing harassment;

26    (3)  directly incites criminal activity or consists of
27 specific threats of violence targeted against a person or group

12

H.B. No. 20

1   because of their race, color, disability, religion, national origin
2   or ancestry, age, sex, or status as a peace officer or judge; or
3               (4)  is unlawful expression.
4        (b)  This chapter may not be construed to prohibit or
5   restrict a social media platform from authorizing or facilitating a
6   user's ability to censor specific expression on the user's platform
7   or page at the request of that user.
8        (c)  This chapter may not be construed to limit or expand
9   intellectual property law.
10       Sec. 143A.007.  USER REMEDIES.  (a)  A user may bring an
11  action against a social media platform that violates this chapter
12  with respect to the user.
13       (b)  If the user proves that the social media platform
14  violated this chapter with respect to the user, the user is entitled
15  to recover:
16            (1)  declaratory relief under Chapter 37, including
17  costs and reasonable and necessary attorney's fees under Section
18  37.009; and
19            (2)  injunctive relief.
20       (c)  If a social media platform fails to promptly comply with
21  a court order in an action brought under this section, the court
22  shall hold the social media platform in contempt and shall use all
23  lawful measures to secure immediate compliance with the order,
24  including daily penalties sufficient to secure immediate
25  compliance.
26       (d)  A user may bring an action under this section regardless
27  of whether another court has enjoined the attorney general from

H.B. No. 20

1 enforcing this chapter or declared any provision of this chapter
2 unconstitutional unless that court decision is binding on the court
3 in which the action is brought.

4     (e)  Nonmutual issue preclusion and nonmutual claim
5 preclusion are not defenses to an action brought under this
6 section.

7     Sec. 143A.008.  ACTION BY ATTORNEY GENERAL.  (a)  Any person
8 may notify the attorney general of a violation or potential
9 violation of this chapter by a social media platform.

10     (b)  The attorney general may bring an action to enjoin a
11 violation or a potential violation of this chapter.  If the
12 injunction is granted, the attorney general may recover costs and
13 reasonable attorney's fees incurred in bringing the action and
14 reasonable investigative costs incurred in relation to the action.

15     SECTION 8.  (a)  Mindful of *Leavitt v. Jane L.*, 518 U.S. 137
16 (1996), in which in the context of determining the severability of a
17 state statute the United States Supreme Court held that an explicit
18 statement of legislative intent is controlling, it is the intent of
19 the legislature that every provision, section, subsection,
20 sentence, clause, phrase, or word in this Act, and every
21 application of the provisions in this Act, are severable from each
22 other.

23     (b)  If any application of any provision in this Act to any
24 person, group of persons, or circumstances is found by a court to be
25 invalid or unconstitutional, the remaining applications of that
26 provision to all other persons and circumstances shall be severed
27 and may not be affected.  All constitutionally valid applications

H.B. No. 20

of this Act shall be severed from any applications that a court finds to be invalid, leaving the valid applications in force, because it is the legislature's intent and priority that the valid applications be allowed to stand alone.

(c)  If any court declares or finds a provision of this Act facially unconstitutional, when discrete applications of that provision can be enforced against a person, group of persons, or circumstances without violating the United States Constitution and Texas Constitution, those applications shall be severed from all remaining applications of the provision, and the provision shall be interpreted as if the legislature had enacted a provision limited to the persons, group of persons, or circumstances for which the provision's application will not violate the United States Constitution and Texas Constitution.

(d)  The legislature further declares that it would have enacted this Act, and each provision, section, subsection, sentence, clause, phrase, or word, and all constitutional applications of this Act, irrespective of the fact that any provision, section, subsection, sentence, clause, phrase, or word, or applications of this Act, were to be declared unconstitutional.

(e)  If any provision of this Act is found by any court to be unconstitutionally vague, the applications of that provision that do not present constitutional vagueness problems shall be severed and remain in force.

(f)  No court may decline to enforce the severability requirements of Subsections (a), (b), (c), (d), and (e) of this section on the ground that severance would rewrite the statute or

15

H.B. No. 20

involve the court in legislative or lawmaking activity.  A court that declines to enforce or enjoins a state official from enforcing a statutory provision does not rewrite a statute, as the statute continues to contain the same words as before the court's decision. A judicial injunction or declaration of unconstitutionality:

(1)  is nothing more than an edict prohibiting enforcement that may subsequently be vacated by a later court if that court has a different understanding of the requirements of the Texas Constitution or United States Constitution;

(2)  is not a formal amendment of the language in a statute; and

(3)  no more rewrites a statute than a decision by the executive not to enforce a duly enacted statute in a limited and defined set of circumstances.

SECTION 9.  Chapter 143A, Civil Practice and Remedies Code, as added by this Act, applies only to a cause of action that accrues on or after the effective date of this Act.

SECTION 10.  This Act takes effect on the 91st day after the last day of the legislative session.

H.B. No. 20

_____    _____
    President of the Senate              Speaker of the House

    I certify that H.B. No. 20 was passed by the House on August 30, 2021, by the following vote:  Yeas 77, Nays 49, 1 present, not voting; and that the House concurred in Senate amendments to H.B. No. 20 on September 2, 2021, by the following vote:  Yeas 78, Nays 42, 1 present, not voting.

_____
    Chief Clerk of the House

    I certify that H.B. No. 20 was passed by the Senate, with amendments, on August 31, 2021, by the following vote:  Yeas 17, Nays 14.

_____
    Secretary of the Senate

APPROVED:  __9-7-21_____
                Date

_____
            Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
7 pm O'CLOCK
SEP 09 2021
_____
Secretary of State

17