# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NetChoice, a 501(c)(6) District of Columbia organization, <br><br> and <br><br> COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION d/b/a CCIA, a 501(c)(6) non-stock Virginia Corporation, <br><br> *Plaintiffs*, <br><br> v. <br><br> KEN PAXTON, in his official capacity as Attorney General of Texas <br><br> *Defendant*. | Civil Action No. 1:21-cv-00840-RP |

## PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR EXPEDITED DISCOVERY AND MOTION FOR EXTENSION

House Bill 20 ("H.B. 20") would make Defendant a crucial arbiter of how the Internet's most popular social media platforms exercise their editorial discretion across the globe. Thus, the law violates the First Amendment and the Commerce Clause, and it is preempted by 47 U.S.C. § 230 ("Section 230"), among other things. *See generally* Dkt. No. 12 (Plaintiffs' motion for preliminary injunction). Absent a preliminary injunction, H.B. 20 will take effect on December 2, 2021, irreparably injuring Plaintiffs, their members, and the users of private "social media platforms."[1] *See NetChoice, LLC v. Moody*, 2021 WL 2690876, *7, *12 (N.D. Fla. June 30, 2021) (enjoining a similar Florida law that would have made the covered platforms "unacceptable—and indeed useless—to most users").

Defendant's response to Plaintiffs' motion for a preliminary injunction is due in two days. Now, mere hours after conferring with Plaintiffs' counsel for the first time about his requests on Monday, Defendant filed: (1) a motion to extend his response deadline 60 days—until two weeks *after* H.B. 20's December 2, 2021 effective date; and (2) an over-length motion without leave of Court seeking unnecessary and overly burdensome "expedited" discovery from *38 separate "third parties"* that would intrude into constitutionally protected editorial practices—exacerbating H.B. 20's constitutional harms. *See* Dkt. Nos. 20, 21; *see also* Dkt. No. 20, at 2 n.1 (identifying 38 of Plaintiffs' combined members as targets for discovery); Dkt. No. 20-4 (same).[2]

Defendant's discovery requests—for a combined 380 deposition topics, 342 requests for

---

[1] Any "Internet website or application" (1) that "functionally has more than 50 million active users in the United States in a calendar month"; (2) is "open to the public"; (3) "allows a user to create an account"; and (4) "enables users to communicate with other users for the primary purpose of posting information, comments, messages, or images." Tex. Bus. & Com. Code §§ 120.001(1), .002(b); Tex. Civ. Prac. & Rem. Code § 143A.003(c). H.B. 20 excludes from this definition: (1) Internet service providers; (2) electronic mail providers; and (3) websites or applications that "consist[] primarily of news, sports, entertainment, or other information or content that is not user generated but is preselected by the provider" where user chats and comments are "incidental to" the content posted by the website or application. Tex. Bus. & Com. Code § 120.001(1)(A)-(C).

[2] Plaintiffs file this combined response to Defendant's 11-page Motion to Expedite Discovery (Dkt. No. 20) and Motion for Extension (Dkt. No. 21), as Defendant's arguments are interrelated.

1

production, and 114 interrogatories—are a delay tactic designed to frustrate this Court's ability to rule on the unlawfulness of H.B. 20 before the law's effective date and to further impede Plaintiffs' members from exercising their First Amendment rights. H.B. 20 is "facially unconstitutional in all applications," "facially invalid under the First Amendment's overbreadth doctrine," and facially preempted. *See* Dkt. No. 12, at 37; *id.* at 28 (explaining facial nature of Plaintiffs' challenge). Here, Plaintiffs challenge H.B. 20's validity, and seek relief for their members covered by H.B. 20 because those members necessarily exercise editorial judgment over the content they publish on their platforms. Accordingly, the dispositive issues are questions of law that do not depend on the resolution of *any* particular fact disputes. Additionally, Defendant's motion for sweeping expedited discovery is a fishing expedition and an attempt to immediately enforce H.B. 20's unconstitutional disclosure provisions intruding into the editorial-discretion practices of Plaintiffs' members.

First Amendment standards "must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." *FEC v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 469 (2007) (controlling plurality op. of Roberts, C.J.) (citing *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)). Plaintiffs respectfully request that the Court deny Defendant's motions.

**I.     Defendant's request to extend the deadline to respond until after the effective date of H.B. 20 is not merely unreasonable and unwarranted, but it would deny Plaintiffs the very relief that they seek.**

Fundamentally, Defendant asks this Court to extend the response deadline beyond the effective date of the challenged law—in effect, denying Plaintiffs' request for preliminary relief under the guise of a procedural motion. *See* Dkt. No. 21. Defendant's request is not only unreasonable and unnecessary, but it would prejudice Plaintiffs and their members. *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 n.8 (5th Cir. 2006).

2

Rule 65 does not impose a briefing schedule, and the Supreme Court has held that Defendant simply be "given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 432 n.7 (1974). In other words, all Rule 65 requires is a "meaningful opportunity to be heard in a meaningful manner." *Netsphere, Inc. v. Baron*, 2013 WL 12128675, at *2 (N.D. Tex. Apr. 22, 2013). This Court has concluded that 14 days is enough to ensure that opportunity. Local Rule CV-7(d)(2).

Defendant does not need 60 more days to have a "fair" or "meaningful" opportunity to respond to Plaintiffs' legal arguments. In fact, Defendant is familiar with these First Amendment issues, having already submitted a brief one month ago in other litigation defending what Defendant called a "similar" law. Brief of the State of Texas, et al., *NetChoice, LLC v. Attorney General, State of Florida*, No. 21-12355, 2021 WL 4237301, at *2 (11th Cir. Sept. 14, 2021); *see also* Press Release, Attorney General Paxton Leads 10-State Coalition to Regulate Big Tech Censorship (Sept. 20, 2021), https://bit.ly/3jfTPaL ("Governor Abbott recently signed Texas' House Bill 20 – similar to Florida's law – in that it seeks to regulate 'Big Tech.'").

As communicated to Defendant's counsel, Plaintiffs have proceeded expeditiously to allow full briefing on the preliminary-injunction motion before the end of October, which would give this Court ample time to decide the issues before H.B. 20's December 2 effective date. *See* Ex. A. Plaintiffs filed their complaint on September 22, 2021 (Dkt. No. 1) and their motion for preliminary injunction on September 30, 2021 (Dkt. No. 8). Before filing their motion, Plaintiffs conferred with counsel for Defendant regarding Plaintiffs' motion to exceed the page limitations, to which Defendant consented. Dkt. No. 8. This Court granted that motion on October 1, 2021, ordering that Plaintiffs' motion be docketed that day. Dkt. No. 12. Over the next week and a half, Defendant

did not confer with counsel for Plaintiffs or indicate any desire to extend his briefing deadline (or request discovery, which is addressed below in Part II).

Instead, Defendant gave Plaintiffs' counsel less than four hours' notice about requesting a *60-day* extension and discovery on an unknown (but up to 38) number of third parties. Plaintiffs offered to consent to a 7-day extension (which would have provided Defendant a total of 21 days to respond to Plaintiffs' motion) and to discuss Defendant's request in more detail. Rather than accept that offer or engage in any meaningful discussion regarding a reasonable alternative, Defendant did not budge from requesting a 60-day extension. *Cf.* Local Rule CV-7(g) (requiring "a good-faith attempt to resolve the matter by agreement").

That requested extension would make Defendant's brief responding to Plaintiffs' motion due on December 14, 2021—almost *two weeks* after H.B. 20 takes effect. Defendant, in other words, wants H.B. 20 to take effect before this Court can adjudicate Plaintiffs' preliminary-injunction motion. Defendant's request for an extension would deeply prejudice Plaintiffs and their members, forcing them to suffer significant First Amendment harms and completely alter their business operations worldwide to comply with H.B. 20. As detailed in Plaintiffs' motion, this would cause irreparable injury for multiple reasons. *See* Dkt. No. 12, at 43-45.

Defendant's only justification for this unreasonable and prejudicial request is that he requires time to conduct the (overbroad and unnecessary) discovery that he has requested. But Defendant cannot bootstrap one improper request onto another, and a 60-day extension is not warranted regardless of whatever discovery Defendant believes is needed.

**II.    Defendant is not entitled to disproportionate, overly broad, and unduly burdensome discovery—which is not needed to decide the purely legal issues before this Court and violates First Amendment rights in much the same way as H.B. 20 itself.**

There is no need for *any* discovery in this case because the issues are purely legal questions and can be resolved promptly. But certainly nothing justifies overbroad "expedited" discovery at

4

this stage given the facial challenges and purely legal questions posed by Plaintiffs' motion for a preliminary injunction. *See supra* p.2. Through his discovery requests, Defendant not only attempts to have H.B. 20 take effect before responding, he also seeks to inflict additional intrusions on the First Amendment rights of Plaintiffs' members even before H.B. 20 can do so.

As an initial matter, Defendant seeks invasive discovery into the First-Amendment-protected editorial practices at the heart of this lawsuit. But First Amendment standards "must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." *Wisconsin Right To Life*, 551 U.S. at 469 (controlling plurality op. of Roberts, C.J.) (citing *Hicks*, 539 U.S. at 119). And contrary to Defendant's assertion, this Court does not need discovery to determine whether the First Amendment protects Plaintiffs' members, as the Supreme Court decided decades ago that it protects Internet websites. *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *accord* Dkt. No. 12, at 17 (collecting cases).

Consequently, this Court must combine the heightened skepticism for invasive discovery in First Amendment cases with the general presumption against expedited discovery. Fed. R. Civ. P. 26(d)(1) (parties generally must wait until after a Rule 26(f) conference to conduct discovery). Thus, Defendant must carry a heightened burden to demonstrate both (1) "good cause," defined in detail below; and (2) that his requests for expedited discovery are "narrowly tailored in scope," "such that discovery can reasonably be completed in a shortened timeframe." *Miner, Ltd. v. Anguiano*, 2019 WL 9633302, at *2 (W.D. Tex. Mar. 20, 2019); *Accruent, LLC v. Short*, 2017 WL 8811606, at *1 (W.D. Tex. Nov. 8, 2017). Defendant cannot show either.

*First*, Defendant cannot demonstrate "good cause" under the relevant factors.

**Breadth of the Discovery Requests.** Defendant's discovery requests are overbroad, as

5

they target seemingly all of Plaintiffs' 38 combined members for depositions, voluminous document requests, and unnecessary interrogatories. *See* Dkt. Nos. 20-1 to -3 (draft discovery requests).

Defendant contends that Plaintiffs raise an as-applied challenge that demands discovery from each member: "[T]hird party discovery as seen in Exs. A-C will be required from" "each one of [Plaintiffs'] members." Dkt. No. 20, at 2 n.1. But Plaintiffs raise facial challenges seeking relief for only their members covered by H.B. 20. *See supra* p.2; *see also generally* Dkt. No. 12. There is no reason for covered members to suffer irreparable injury waiting for Defendant to pursue discovery from other members not covered by H.B. 20. Furthermore, as detailed below, even if Defendant sought discovery from a reasonable number of third parties, the discovery requests remain grossly overbroad.

**Purpose of the Discovery Requests.** Plaintiffs' preliminary-injunction motion concerns pure questions of law regarding H.B. 20's (1) unconstitutional and preempted intrusions on Plaintiffs' members' exercise of editorial judgment; and (2) unconstitutional regulation of interstate commerce. *See supra* p.2. These are purely legal questions about H.B. 20's plain effect on Plaintiffs' members. Yet Defendant seeks voluminous detail about all manner of Plaintiffs' many members' operations. Purportedly designed to aid this Court's review of Plaintiffs' motion, Defendant's current discovery requests instead seem calculated to further antagonize H.B. 20's target companies for exercising their First Amendment rights. *E.g.*, Dkt. No. 14-2 at 6 (amicus brief from Reporters Committee for Freedom of the Press, et al., describing Defendant's other actions against covered platforms). Though each discovery request is objectionable, this Response addresses the general problems with Defendant's vague and broad requests at this early stage in the litigation.

Defendant must offer more than conclusory assertions that issues raised in Plaintiffs' motion could benefit from discovery. Rather, expedited discovery is an extraordinary option requiring

6

Defendant to "specify" which issues need discovery and explain why they cannot be resolved without it. *E.g.*, *Fidelity Brokerage Services, LLC, v. Jason Edwards and Edward D. Jones & Co., LP*, 2021 WL 3771771, at *1 (N.D. Tex. Feb. 4, 2021) (citation omitted).

Defendant contends that this voluminous discovery is justified for a few reasons, none of which is convincing. At no point in his motion does Defendant tie or tailor the discovery requests to the doctrine undergirding Plaintiffs' claims. And thus none of the requests will assist in resolving Plaintiffs' claims. Instead, they are attempts to further penalize covered platforms.

*As-Applied Relief for All Members*. Plaintiffs seek an injunction applying only to Plaintiffs' members—rather than a universal, non-party injunction. But Plaintiffs' legal claims are facial challenges based on defects on the face of H.B. 20 that render all its applications unconstitutional. Plaintiffs have not made an "as-applied" claim requiring fact-specific relief for particular members, so it is not necessary for Defendant to obtain discovery from all members. *See supra* p.2; *cf.* Dkt. No. 20, at 3.

*Determining "Common Carrier" Status*. Defendant fails to cite any binding caselaw that substantiates any specific discovery request. Instead, Defendant devotes much of his motion to a statement from a single Justice respecting the denial of certiorari in *Biden v. Knight First Amendment Institute*, 141 S. Ct. 1220, 1224 (2021). *See* Dkt. No. 20 at 3-5.[3] Contrary to Defendant's assertion, however, covered platforms are not common carriers as a matter of law, so discovery is wholly unnecessary. *See* Dkt. No. 12, at 31-32; Dkt. No. 16-2 (TechFreedom amicus brief concerning common carrier issues). And even if covered platforms were common carriers, the statu-

---

[3] Defendant also cites *United States Telecom Ass'n v. FEC*, which addressed FCC regulations governing Internet service providers. *See* 825 F.3d 674, 741 (D.C. Cir. 2016). Whatever First Amendment analysis applies to such businesses, Internet websites and application platforms are not Internet service providers (and, in all events, Internet platforms are not subject to those FCC regulations).

7

tory label as "a common carrier scheme has no real First Amendment consequences," so "imposing] a form of common carrier obligation" cannot justify unconstitutional restrictions. *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 824-26 (1996) (Thomas, J., concurring in judgment in part and dissenting in part).

*How Platforms Moderate Content*. Defendant offers no explanation why his requested discovery regarding the technical aspects of content-moderation practices is at all relevant to the First Amendment analysis, nor do these requests rely on the prevailing First Amendment standard. Dkt. No. 20 at 5-6.

Plaintiffs have provided declarations substantiating what is mostly common knowledge: H.B.-20-covered platforms engage in content moderation (*i.e.*, editorial discretion) that reflects their respective judgments about the kind of expression the platforms want to curate and disseminate to their users. *See* Dkt. Nos. 12-1 to -4. In those declarations, Plaintiffs and their members extensively cited and quoted publicly available statements from the platforms themselves. Defendant, however, has requested discovery regarding precise technical issues that are irrelevant to the key First Amendment, Commerce Clause, and preemption issues.[4]

Importantly, this is a case about H.B. 20 unlawfully curtailing (and otherwise chilling) content-moderation practices and compelling speech by prohibiting covered platforms from engaging in what H.B. 20 calls "viewpoint" discrimination. Tex. Civ. Prac. & Rem. Code

---

[4] Defendant contends that "rotely-applied computer programs, not persons, [ ] moderate content for Plaintiffs' members in unique and individual ways." Dkt. No. 20, at 6; *see also id.* at 7. To the extent this describes certain platforms' content-moderation practices, it ignores that the "computer programs" must be programmed by humans with those humans' subjective views about what content to disseminate, prioritize, and (sometimes) append with more context. *See* Dkt. No. 12, at 3 (collecting declaration citations).

For that reason, this Court's statements in *Defense Distributed v. U.S. Department of State* do not compel extensive discovery here. 121 F. Supp. 3d 680, 692 (W.D. Tex. 2015). Unlike that case, where the "precise technical nature of the computer files at issue" (for 3-D printed firearm components) was key to the dispute, *id.*; here the algorithms are merely the technical means by which the platforms apply their editorial judgments at scale. Dkt. No. 12, at 3. And it is only those judgments that matter for the First Amendment analysis.

§§ 143A.001(1), .002. Whatever other issues Defendant now asserts in his discovery motion, H.B. 20 is ill-suited to address those purported problems and those purported problems cannot justify Defendant's discovery requests here. *Cf.* Dkt. No. 20, at 6-7.

Finally, Plaintiffs' members do not need to demonstrate that a First Amendment violation will cause them any peculiar irreparable injury, as the Supreme Court recognizes that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, *unquestionably constitutes* irreparable injury.'" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (emphasis added; quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)).

*Effect of Disclosure Requirements*. Plaintiffs have argued that H.B. 20's disclosure requirements impose both voluminous and vague reporting requirements on covered platforms, subjecting them to potential liability at the discretion of the Texas Attorney General, and violating the Supreme Court's instruction on when such disclosure obligations are constitutional. *See* Dkt. No. 12, at 11-13, 23-26, 30. Defendant does not explain how his discovery requests address the issues of these combined burdens or how his requests accord with the inquiry necessary under the prevailing standards. *Cf.* Dkt. No. 20, at 8-9.[5]

*Necessity for Discovery on Other Causes of Action*. Here, Defendant again repeats that Plaintiffs' facial claims involving pure legal questions are somehow as-applied claims that require discovery from all members. *Id.* at 10-11. And here too, Defendant fails to explain how any discovery request is designed to secure information necessary to defend against Plaintiffs' motion.

**Burdens on the Plaintiffs.** Defendant's requests are overly burdensome, as they would

---

[5] Here, Defendant makes yet another irrelevant (and erroneous) argument that Plaintiffs' members' reliance on the First Amendment to protect their editorial discretion is somehow at odds with Congress's protections for *all* websites under 47 U.S.C. § 230. As detailed in Plaintiffs' motion, covered platforms—like all websites—have the First Amendment right to shape the communities they cultivate by exercising editorial control over the expression they publish on their platforms. *See* Dkt. No. 12, at 14-18. Complementarily, "Section 230 'specifically proscribes liability'" for platforms' "'decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role.'" *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008).

require depositions, document production, and interrogatories from 38 non-parties.

Even if this case required limited discovery, it would not require the overly broad discovery Defendant has proposed. For instance, regarding depositions, courts have long recognized that depositions are costly and time-consuming. *United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967) ("In actual practice the taking of testimony under the rules providing for depositions is costly, time consuming, and in some circumstances complicated."). And regarding the document-production requests, Defendant requested more documents than Defendant could hope to review in time to file a response—even if granted an unreasonable 60-day extension.

**How Far in Advance of Typical Discovery.** Defendant's request here comes "well in advance of normal discovery"—before Defendant has even responded to the Complaint—which "weighs against a finding of good cause." *Amos v. Taylor*, 2020 WL 5809972, at *10 (N.D. Miss. Aug. 26, 2020) (citing *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015)).

*Second*, Defendant's discovery requests are not "narrowly tailored"—they are broader than necessary to resolve the questions of law before this Court and, in all events, far broader than necessary to respond to the limited (and basic) factual assertions in Plaintiffs' supporting declarations. Defendant has made no effort to limit discovery requests to the (1) companies (if any); (2) information; and (3) documents necessary to address the issues in Plaintiffs' motion for preliminary injunction. When this Court has granted expedited discovery, it has emphasized the narrowness of the requests. *E.g.*, *Intel Corp. v. Rais*, 2019 WL 164958, at *7 (W.D. Tex. Jan. 10, 2019). Because Defendant has made no such effort here, the discovery requests are improper.

## CONCLUSION

Defendant has combined improper procedural requests in an effort to deny (1) Plaintiffs the relief they seek and (2) this Court a timely opportunity to consider Plaintiffs' motion. Plaintiffs respectfully request that this Court deny Defendant's motions (Dkt. Nos. 20, 21).

Dated: October 13, 2021

Steven P. Lehotsky*
steve@lehotskykeller.com
Jonathan D. Urick*
jon@lehotskykeller.com
Jeremy Evan Maltz (Texas Bar # 24102129)
jeremy@lehotskykeller.com
Gabriela Gonzalez-Araiza*
gabriela@lehotskykeller.com
LEHOTSKY KELLER LLP
200 Massachusetts Avenue, NW
Washington, DC 20001

Respectfully submitted,

*/s/ Scott A. Keller*
Scott A. Keller (Texas Bar # 24062822)
scott@lehotskykeller.com
Matthew H. Frederick (Texas Bar # 24040931)
matt@lehotskykeller.com
Todd Disher (Texas Bar # 24081854)
todd@lehotskykeller.com
LEHOTSKY KELLER LLP
919 Congress Ave.
Austin, TX 78701
T: (512) 693-8350
F: (833) 233-2202

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

By agreement of counsel, I served this document and accompanying exhibit on counsel for Defendant on October 13, 2021, by email to the following addresses:

courtney.corbello@oag.texas.gov
christopher.hilton@oag.texas.gov
thomas.ray@oag.texas.gov

I also certify that this document was served on counsel for amici curiae through the Court's CM/ECF electronic service system on October 13, 2021.

*/s/ Todd Disher*
Todd Disher