IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

NETCHOICE, LLC d/b/a NetChoice, a 501(c)(6)
District of Columbia organization, and
COMPUTER & COMMUNICATIONS INDUSTRY
ASSOCIATION d/b/a CCIA, a 501(c)(6) non-
stock Virginia Corporation,
    *Plaintiffs*,

v.

KEN PAXTON, in his official capacity as
Attorney General of Texas,
    *Defendant*.

Civil Action No. 1:21-cv-00840-RP

### DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY

Plaintiffs' strategic choices to shield their members from having to represent their own interests, and make binding claims under penalty of perjury, in this case is not a proper reason to place Defendant at a disadvantage to defend itself or lessen this Court's ability to consider the claims at issue. While these members believe themselves omnipotent from accountability to the public, that omnipotence need not be honored by this Court. Expedited discovery should be granted and Plaintiffs should be required to meet their burden at every step of this litigation.

### REPLY

### I.  DEFENDANT HAS SOUGHT DISCOVERY NARROWLY TAILORED TO PLAINTIFFS' CHOICE OF CLAIMS AND SOUGHT-AFTER RELIEF IN THIS CASE.

Plaintiffs have chosen to bring suit alleging four different causes of action, all of which requir several elements to prove, on behalf of "38 members" for as-applied relief to each and every one of them. Dkt. No. 1. Despite doing so, Plaintiffs ask this Court to shield their members from any participation in this suit or requirement that they demonstrate some sort of constitutional right

being violated or burden being suffered. While this strategy is certainly not new for these members, it should not be sanctioned.

### A. Defendant's Discovery Requests Are Reasonable and Narrowly Tailored Based on the Causes of Actions Plaintiffs Have Chosen to Bring on Behalf of All of their Members.

"[W]hen factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted." *Kaepa v. Achilles*, 76 F.3d 624, 628 (5th Cir.), cert. denied, 519 U.S. 821 (1996). Here, Defendant has clearly provided the Court with several material factual disputes, and asked, in turn, only for the discovery needed to present its version of the facts: (1) whether Plaintiffs' members are common carriers[1] (Ex. A Topics 1, 3-6; Ex. B RFPs 1-8; Ex. C ROGs 1-2); (2) what content moderation actually entails for each member given that they provide "*different* experiences to *different* audiences" (Dkt. No. 12 at 14) (Ex. A Topics 1-3, 5-6, 8-9; Ex. B RFPs 1, 4-8; Ex. C ROGs 1, 3); (3) the extent to which members actually engage in content moderation that qualifies as use of "editorial discretion;" (Ex. A Topics 1-3, 5-6, 8-9; Ex. B RFPs 1, 4-8; Ex. C ROGs 1, 3); (4) the probable effects of H.B. 20 on Plaintiffs' members (Ex. A Topics 1-10; Ex. B RFPs 1-9; Ex. C ROGs 1-3); (5) whether Plaintiffs' members know what is required of them under H.B. 20 (Ex. A Topics 1-2, 7; Ex. B RFPs 1, 3, 4; Ex. C ROGs 2-3); and (6) the impact of H.B. 20 on Plaintiffs' members ability to comply with federal law (Ex. A Topics 2-3; Ex. B RFPs 2-3; Ex. C ROGs 2-3).

---

[1] Plaintiffs appear to suggest this issue is settled as a "matter of law." Dkt. No. 22 (citing to own PI motion and amicus briefs in support). But they also assert rights on behalf of their users – the public – and acknowledge their members fall under the definition of "Internet website or application" which includes being "open to the public," a trait of the common carrier. *Id.* at 2. Moreover, there is no authority for this issue being settled as a matter of law. *Biden v. Knight First Amendment Inst. At Columbia Univ.*, 141 S. Ct. 1220, 1224 (2021) (Thomas, J. concurring) ("[A]pplying old doctrines to new digital platforms is rarely straightforward…In many ways, digital platforms that hold themselves out to the public resemble traditional common carriers.").

These are all disputed contentions that form the basis of Plaintiffs' causes of action, which they ask this Court to deem "likely to succeed" for purposes of a preliminary injunction request. Dkt. No. 12. But a preliminary injunction requires this Court to judge the parties' respective chances for success on the merits and, currently, that judgment can be made only on Plaintiffs' members' self-serving affidavits. Dkt. Nos. 12-1 – 12-7. For Plaintiffs to argue that Defendant need not discover *anything* about the basis for these claims, while simultaneously presenting evidence from their own members in support of their position, is disingenuous.

It is similarly disingenuous to lament the extent of the discovery sought given the choices Plaintiffs have made in bringing this suit. Plaintiffs claim to represent *all* of their members in seeking to strike down H.B. 20's neutrality and disclosure requirements. This group of members, includes, for example, Lime, an electric scooter and bike rental company; Hotels.com, a site to rent hotel rooms; and Rakuten, a site that provides coupons, promo codes and discounts to online retailers. None of these companies could plausibly be categorized as a "social media platform" under H.B. 20. § 120.001(1) (defining "social media platform" as internet website that "enables users to communicate with other users for the primary purpose of posting information, comments, messages, or images."). None of these companies are possibly "moderating user-generated content" in the same way Facebook or Twitter do.[2] Despite this, Plaintiffs have made the deliberate choice to bring suit without consideration of H.B. 20's applicability to their members individually. To deliberately create a specific framework for this suit and then argue that Defendant is asking for "burdensome" discovery to defend itself within that framework defies logic. Plaintiffs cannot reasonably be asking this Court to grant broad relief to all of its members while

---

[2] This is made clear by Plaintiffs who describe each member as having unique algorithms they do not share with competitors. Dkt. No. 1 at ¶21.

simultaneously arguing there need not be any proof that H.B. 20 applies to and burdens those same members.

Thus, rather than permit such an unlevel playing field at the preliminary injunction stage, Defendant asks that it be granted the same level of ability to present its claims and defenses to this Court as Plaintiffs have already utilized. Prior to this Court enjoining an entire state law, the most judicious option would be to permit the limited discovery Defendant has proposed on all members Plaintiffs seek to represent.[3]

### B. Defendant's Discovery Requests Are Reasonable and Narrowly Tailored Based on the As-Applied Relief Plaintiffs Have Chosen to Seek on Behalf of All of their Members.

Not only do Plaintiffs wrongly argue that discovery is unnecessary for *any* of their grounds for seeking the "extraordinary remedy" of a preliminary injunction, they also erroneously claim it to be unnecessary for this Court's consideration of the proper relief because, now, they want something resembling facial relief. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Facial and as-applied challenges have different substantive requirements. "An as-applied challenge is to the statute or regulation's application of the plaintiff's 'own expressive activities.'" *People for Ethical Treatment of Animals v. Hinckley*, CV H-20-3681, 2021 WL 982262, at *4 (S.D. Tex. Mar. 16, 2021) (quoting *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 803 (1984)). Thus, in the as-applied context that Plaintiffs have intentionally chosen (Dkt. No. 1 at 47), this Court cannot provide relief on a bare record that does not consist of the precise harm being suffered by each of Plaintiffs' members. *Justice v. Hosemann*, 771 F.3d 285, 295 (5th Cir.

---

[3] To the extent Plaintiffs are arguing that discovery is too broad because a large portion of their members are not social media companies, Defendant is amenable to withdrawing any request for discovery as to those specifically-identified members.

2014) (holding "Plaintiffs' as-applied challenge, asserted both as a collective group and by each Plaintiff individually, fail[ed]" as a result of no evidence presented of the harm the challenge law caused on each plaintiff); *Watkins v. City of Arlington*, 123 F. Supp. 3d 856, 866 (N.D. Tex. 2015) (stating evidence "about future enforcement, absent further factual development, is not sufficient to support an as-applied challenge.").

In order to avoid this reality, and with no cite to their complaint, Plaintiffs claim they have made only "*facial* challenges seeking relief for *only their members* covered by H.B. 20." Dkt. No. 22 at 7 (citing PI motion (Dkt. No. 12) and Dkt. No. 22 at 2). To the extent this constitutes a facial challenge, it is in direct contrast to the "Prayer for Relief" section of Plaintiffs complaint. There, which limits the requested relief to declaring that **two** out of the **ten** sections present in H.B. 20 - "Section 2" and "Section 7" - are "unlawful **as applied to Plaintiffs' members**" and enjoining enforcement of those two sections on that basis. Dkt. No. 1 at 47 (emphasis added); *see Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 425 (5th Cir. 2014) (stating plaintiffs "properly labelled" their "as-applied" challenge when they did not seek relief "beyond the particular circumstances of the plaintiff."). And to claim, now, that a facial challenge has been made, is belied by the fact that Plaintiffs attached declarations and "evidence" from their own members in support of preliminary injunction. To allow Plaintiffs to present evidence, even under the guise of a "facial challenge,[4]" and not allow Defendant the ability to do the same is the exact prejudice that expedited discovery would cure.

---

[4] Even if this Court were to go outside the complaint and consider a facial challenge to the entirety of H.B. 20, this would not obviate the need for discovery. The fact remains that, whatever the challenge, this Court needs to determine whether Plaintiffs' members are common carriers in order to engage in the appropriate consideration of H.B. 20's implications on their First Amendment rights to determine standing. As explained, *supra* and in Defendant's motion (Dkt. No. 20), that is a question that requires evidence.

## II.    A CONSIDERATION OF PREJUDICE TO THE PARTIES IN GRANTING AN EXTENSION WEIGHS IN FAVOR OF DEFENDANT.

Plaintiffs, who already have a monopoly over all relevant information in this case, had four weeks to prepare their suit; Defendant, who suffers from a striking information asymmetry, will be prejudiced without a meaningful extension of its deadline to respond. Plaintiffs were on notice of H.B. 20's imminence since media reports of the bill's passage began to appear on September 2, 2021. *See*, *e.g.*, [*Social media companies can't ban Texans*](), Texas Tribune, Sept. 2, 2021. H.B. 20 was signed into law on September 9, 2021, and Plaintiffs waited two weeks before filing suit and attempting service. Dkt. No. 1. Plaintiffs waited another week before filing a preliminary injunction motion. Dkt. No. 12. Plaintiffs have thus provided themselves the time necessary to gather declarations from their members and to present their claims – more time, in fact, than the three weeks total their offered seven-day extension would give Defendant.

Defendant seeks to do only the same. On Defendant's side, that requires engaging in discovery – and, unfortunately, in resolving the discovery disputes that Plaintiffs' Response indicates will arise – necessary to present its defense. That will take more than the total three weeks Plaintiffs' offer of a seven-day extension brings Defendant's response deadline to, which is less than what Plaintiff had to prepare its case. Defendant, and this Court, at present, possesses only a paucity of mostly inconsistent information. Defendant will be prejudiced far more if the Court denies the requested extension and discovery than will be Plaintiffs if the Court grants them.

Further, that the law Plaintiffs do not like would go into effect before a preliminary injunction could issue is not reason enough to find *irreparable harm*, as Plaintiffs' motion contends, *See* Dkt. No. 22 at 2. As the Supreme Court recently noted in denying an application for injunctive relief, "federal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the

laws themselves," *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021), so it is irrelevant whether the objected to law has gone into effect or not. Plaintiffs claim their harm will flow from enforcement of the law by Texas or by the private suits H.B. 20 provides for, but the Supreme Court has "decline[d] to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Plaintiffs thus cannot date the onset of their claimed irreparable harm to the day H.B. 20 will take effect. *See California v. Texas*, 141 S. Ct. 2104, 2116 (2021); *see also United States v. Tex.*, 21-50949, 2021 WL 4706452, at *1 (5th Cir. Oct. 8, 2021) (granting temporary administrative stay of preliminary injunction enjoining law already gone into effect).

Contrastingly, denying Defendant the ability to conduct expedited discovery, while also denying the time to respond to Plaintiffs' preliminary injunction motion, is undeniably irreparably harmful. The Fifth Circuit is unambiguous on this point: "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014) (quoting *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013)).

Defendant will be irreparably harmed if the Court enjoins H.B. 20. Plaintiffs' members will not if the Court does not. As a result, Plaintiffs' members will not suffer irreparable harm if the Court extends Defendant's response deadline until after H.B. 20 goes into effect and grants Defendant expedited discovery.

## III.    DISCOVERY WOULD ALSO ALLOW THIS COURT TO MORE FULLY CONSIDER THE PUBLIC INTEREST PRONG.

The final factor in the preliminary injunction analysis would also be served by the granting of expedited discovery. Plaintiffs have the burden to show that if granted, a preliminary injunction

would not be adverse to public interest. *Star Satellite, Inc. v. Biloxi,* 779 F.2d 1074, 1079 (5th Cir.1986). If no public interest supports granting preliminary relief, such relief should ordinarily be denied, "even if the public interest would not be harmed by one." *Tex. v. United States*, 86 F. Supp. 3d 591, 675 (S.D. Tex. 2015), aff'd, 809 F.3d 134 (5th Cir. 2015), as revised (Nov. 25, 2015) (quoting Wright & Miller § 2948.4). "Consequently, an evaluation of the public interest should be given *considerable weight* in determining whether a motion for a preliminary injunction should be granted." *Id.*

In giving this prong its due weight, this Court would benefit from discovery regarding the public interest in enjoining H.B. 20 from taking effect. Plaintiffs have made only the most cursory claim that "allowing Plaintiffs' members to exercise their First Amendment rights as they have for years is in the public interest." Dkt. No. 12 at 45. But publicly available information indicates that their members have access to data that indicates their platforms, as they are currently run without any type of accountability to the public, are deeply and irreparably harming our society.[5]

The current record before this Court shows only what is in Plaintiffs' *members'* interest when serving the public. Discovery on Plaintiffs' members content moderation practices and results (Exs. A-C to Dkt. No. 20) will allow this Court to engage in the proper consideration: whether enjoining H.B. 20 is truly in the public interest.

---

[5] Melissa Hunt, *No More FOMO: Limiting Social Media Decreases Loneliness and Depression*, Journal of Social and Clinical Psychology, Vol. 37, Iss. 10 (Dec 2018) (study finding that "limiting social media use to approximately 30 minutes per day may lead to significant improvement in well-being."); *Facebook's Effort to Attract Preteens Goes Beyond Instagram Kids, Documents Show*, Wall Street Journal (https://www.wsj.com/articles/facebook-instagram-kids-tweens-attract-11632849667?mod=article_inline) (last visited Oct. 6, 2021) ( stating that "teams of employees have for years been laying plans to attract preteens that go beyond what is publicly known" despite the fact that "Facebook's own research has shown that Instagram can have a negative effect on teen mental health, especially among girls."); see also 5Rights Foundation (https://5rightsfoundation.com/in-action/new-research-shows-children-directly-targeted-with-graphic-content-within-as-little-as-24-hours-of-creating-an-online-social-media-account.html) (research revealing "services such as Facebook, Instagram and TikTok are allowing children, some as young as 13 years old, to be directly targeted within 24 hours of creating an account with a stream of harmful content.").

## CONCLUSION

Plaintiffs fail to demonstrate why this Court should proceed to preliminary injunction without granting Defendant expedited discovery. As the record sits now, this Court has only self-serving affidavits citing to "evidence" that benefits Plaintiffs' members while obviating the irresponsibility for the representations made to this Court. In order for this litigation to proceed in the most efficient and reasonable way possible, Defendant asks only that it be given the opportunity to adequately defend against the striking down of a state law by conducting narrow discovery.

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Division Chief
General Litigation Division

/s/ Courtney Corbello
COURTNEY CORBELLO
Attorney-in-Charge
Assistant Attorney General
Texas State Bar No. 24097533
courtney.corbello@oag.texas.gov

CHRISTOPHER D. HILTON
Assistant Attorney General
Texas State Bar No. 24087727
christopher.hilton@oag.texas.gov

**BENJAMIN STOREY LYLES**
Counsel of Record
Assistant Attorney General
Texas State Bar No. 24094808
*benjamin.lyles@oag.texas.gov*

**BENJAMIN S. WALTON**
Counsel of Record
Assistant Attorney General
Texas State Bar No. 24075241
*benjamin.walton@oag.texas.gov*

General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 936-2109
**ATTORNEYS FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I certify that on October 14, 2021 the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General

### NOTICE OF ELECTRONIC FILING

I, **COURTNEY CORBELLO**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the United States District Court for the Western District of Texas, on October 14, 2021.

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General