**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| NETCHOICE, LLC d/b/a NetChoice, a 501(c)(6) District of Columbia organization, | ) ) ) | |
| and | ) ) | |
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION d/b/a CCIA, a 501(c)(6) non-stock Virginia Corporation, | ) ) ) | Civil Action No. 1:21-cv-00840-RP |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | |
| KEN PAXTON, in his official capacity as Attorney General of Texas, | ) ) ) | |
| *Defendant*. | ) ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT............................................................................................................................. 3

I.  Plaintiffs have associational standing to represent their members covered by
    H.B. 20.... ........................................................................................................................ 3

    A.  Plaintiffs' members have standing to sue in their own right. .................................. 4

        1.  As H.B. 20's direct targets, Plaintiffs' members have standing because
        they intend to engage in activity the statute prohibits and regulates. ............ 4

        2.  Plaintiffs' members also have standing because H.B. 20 threatens them
        with classic economic harms. ........................................................................ 6

        3.  Although the merits of Plaintiffs' claims are irrelevant to standing, the
        Complaint establishes that H.B. 20 is unconstitutional and preempted........ 8

    B.  Adjudicating Plaintiffs' claims and awarding their requested relief do not
        require the participation of their members. ........................................................... 12

        1.  Plaintiffs' claims present pure questions of law applied to simple,
        undisputed facts. ......................................................................................... 13

        2.  Plaintiffs have requested straightforward relief: enjoining Defendant
        from enforcing H.B. 20 against Plaintiffs' members.................................... 17

II.  Plaintiffs also have organizational standing. .................................................................. 19

CONCLUSION....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*520 S. Mich. Ave. Assocs., Ltd. v. Shannon*,
    549 F.3d 1119 (7th Cir. 2008) ............................................................................................14

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967).............................................................................................................6

*Air Evac EMS, Inc. v. Tex. Mut. Ins. Co.*,
    851 F.3d 507 (5th Cir. 2017) ............................................................................................13

*Airline Serv. Providers Ass'n v. Los Angeles World Airports*,
    873 F.3d 1074 (9th Cir. 2017) ..........................................................................................15

*Ala. Legislative Black Caucus v. Alabama*,
    575 U.S. 254 (2015).............................................................................................................4

*Allen v. Sackrider*,
    37 N.Y. 341 (1867) ...........................................................................................................16

*Americans for Prosperity Found. v. Bonta*,
    141 S. Ct. 2373 (2021).......................................................................................................14

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)...........................................................................................................13

*Ass'n for Accessible Medicines v. Frosh*,
    887 F.3d 664 (4th Cir. 2018) ............................................................................................14

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
    627 F.3d 547 (5th Cir. 2010) ...............................................................................4, 13, 18

*Barilla v. City of Houston*,
    13 F.4th 427 (5th Cir. 2021) ...............................................................................................5

*Bryant v. Military Dep't of Miss.*,
    597 F.3d 678 (5th Cir. 2010) ............................................................................................13

*California v. Texas*,
    141 S. Ct. 2104 (2021).......................................................................................................17

*Cath. Leadership Coal. of Tex. v. Reisman*,
    764 F.3d 409 (5th Cir. 2014) ............................................................................................18

*Citizens United v. FEC*,
    558 U.S. 310 (2010)................................................................................................18

*City of L.A. v. Patel*,
    576 U.S. 409 (2015) ..................................................................................................1

*Concerned Home Care Providers, Inc. v. Cuomo*,
    783 F.3d 77 (2d Cir. 2015)......................................................................................14

*Ctr. for Individual Freedom v. Carmouche*,
    449 F.3d 655 (5th Cir. 2006) ......................................................................2, 12, 14

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
    518 U.S. 727 (1996)................................................................................................17

*Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*,
    760 F.3d 427 (5th Cir. 2014) (en banc) .................................................................14

*Duarte ex rel. Duarte v. City of Lewisville*,
    759 F.3d 514 (5th Cir. 2014) ...................................................................................8

*E-ventures Worldwide, LLC v. Google, Inc.*,
    2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) ........................................................11

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*,
    284 F.3d 575 (5th Cir. 2002) ..................................................................1, 12, 15, 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000)...........................................................................................3, 12

*Garza v. Wyeth LLC*,
    2015 WL 364286 (S.D. Tex. Jan. 27, 2015) .........................................................14

*Glob. Naps, Inc. v. Verizon New England, Inc.*,
    444 F.3d 59 (1st Cir. 2006).....................................................................................14

*Golden State Transit Corp. v. Los Angeles*,
    493 U.S. 103 (1989)................................................................................................13

*Grant ex rel. Fam. Eldercare v. Gilbert*,
    324 F.3d 383 (5th Cir. 2003) ...................................................................................8

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)................................................................................................15

*Herbert v. Lando*,
    441 U.S. 153 (1979)..................................................................................................9

*Howard v. America Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) ...........................................................................16

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)..........................................................................................18

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995)............................................................................................9

*In re Fed.-Mogul Glob. Inc.*,
    684 F.3d 355 (3d Cir. 2012)..............................................................................14

*Jian Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014)...................................................................11

*John Doe No. 1 v. Reed*,
    561 U.S. 186 (2010)..........................................................................................18

*Johnson v. United States*,
    576 U.S. 591 (2015)...........................................................................................15

*Kinderstart.com LLC v. Google, Inc.*,
    2006 WL 3246596 (N.D. Cal. July 13, 2006)....................................................16

*Mance v. Sessions*,
    896 F.3d 699 (5th Cir. 2018) .............................................................................11

*McKinley v. Abbott*,
    643 F.3d 403 (5th Cir. 2011) ...............................................................................4

*McLemore v. Gumucio*,
    2019 WL 3305131 (M.D. Tenn. July 23, 2019) .................................................14

*Merck Sharp & Dohme Corp. v. Albrecht*,
    139 S. Ct. 1668 (2019).......................................................................................14

*Miami Herald Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974).......................................................................................9, 14

*Millan v. Facebook, Inc.*,
    2021 WL 1149937 (Cal. Ct. App. Mar. 25, 2021) (unpublished) ...........................16

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)...........................................................................................12

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    138 S. Ct. 1461, 1486 (2018) .............................................................................17

iv

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ................................................................................................ 14

*Nat'l Press Photographers Ass'n v. McCraw*,
    504 F. Supp. 3d 568 (W.D. Tex. 2020) ........................................................ 2, 12, 14, 15

*NetChoice, LLC v. Moody*,
    2021 WL 2690876 (N.D. Fla. June 30, 2021) ............................................... *passim*

*OCA-Greater Hous. v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ...................................................................................... 19

*Pennell v. City of San Jose*,
    485 U.S. 1 (1988) .......................................................................................................... 3

*Prison Legal News v. Livingston*,
    683 F.3d 201 (5th Cir. 2012) .................................................................................... 5, 8

*Rumsfeld v. Forum for Acadmic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ...................................................................................................... 11

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...................................................................................................... 4

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ...................................................................................................... 5

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
    989 F.3d 368 (5th Cir. 2021) ................................................................................ 3, 7, 12

*Tex. Democratic Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) ........................................................................................ 6

*Tex. Ent. Ass'n, Inc. v. Hegar*,
    10 F.4th 495 (5th Cir. 2021) ...................................................................................... 18

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019) .................................................................................... 1, 5

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ........................................................................................ 6

*Time Warner Cable Inc. v. Hudson*,
    667 F.3d 630 (5th Cir. 2012) .................................................................................. 5, 16

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) .................................................................................................... 16

*United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ...............................................................................................13

*United States v. Clark*,
  582 F.3d 607 (5th Cir. 2009) .................................................................................15

*Virginia v. Am. Booksellers Ass'n, Inc.*,
  484 U.S. 383 (1988)..................................................................................................6

*Warth v. Seldin*,
  422 U.S. 490 (1975)...............................................................................................3, 8

*Winery v. Wilcher*,
  2006 WL 8449122 (W.D. Ky. Feb. 7, 2006) .........................................................14

**Statutes**

47 U.S.C. § 230...........................................................................................................1, 12

Tex. Bus. & Com. Code § 120.001 ..............................................................................15

Tex. Bus. & Com. Code § 120.151 ..............................................................................13

Tex. Civ. Prac. & Rem. Code § 143A.006 .............................................................10, 11

Tex. Civ. Prac. & Rem. Code § 143A.008 ..................................................................13

**Other Authorities**

Brief of the State of Texas, et al., *NetChoice, LLC v. Attorney General, State of
  Florida*, No. 21-12355, 2021 WL 4237301 (11th Cir. Sept. 14, 2021).....................2

# INTRODUCTION

Defendant's motion to dismiss the Complaint for lack of standing is meritless. Long-standing Supreme Court and Fifth Circuit precedents allow associations, like Plaintiffs NetChoice and CCIA, to sue on behalf of their members where (as here) those members are the object of state regulation. This is especially true here where House Bill 20 ("H.B. 20") would require Plaintiffs' members to spend significant time and money overhauling their content-moderation policies and proprietary computer programs, both of which have taken years to develop with substantial resources. And Plaintiffs' claims for injunctive and declaratory relief present pure questions of law requiring no individualized proof or participation from any particular social media platform.

Plaintiffs' members are unquestionably "the object" of H.B. 20's regulation, so Article III injury here is plain. *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019). H.B. 20 targets a small group of "social media platforms," requires those disfavored platforms to disseminate content the platforms find objectionable and contrary to their policies, and subjects those select platforms to invasive and chilling disclosure and operational requirements. In other words, H.B. 20 directly prohibits the platforms from moderating content and compels them to change their businesses and make onerous disclosures designed to monitor the editorial discretion they exercise over their own privately owned websites and applications.

And Plaintiffs have associational standing here to represent their members. Plaintiffs raise "pure questions of law" dictating that H.B. 20 is unlawful, and resolution of these claims under the applicable legal tests does not require "individualized information" from any of Plaintiffs' members. *Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002). Plaintiffs' claims on the merits raise "facial" challenges to H.B. 20: whether H.B. 20 (1) violates the First Amendment; (2) is preempted by 47 U.S.C. § 230; and (3) regulates

extraterritorially in violation of the Commerce Clause. *See generally* Dkt. Nos. 1 ("Compl."), 12 ("PI Motion").[1] And "a facial challenge to the constitutionality of a statute presents a pure question of law." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006). As this Court has recognized before, "because this is a facial challenge to the [state statute], it is unlikely that the proceedings will be fact intensive or that [Plaintiffs'] individual members will be required to participate in this lawsuit." *Nat'l Press Photographers Ass'n v. McCraw*, 504 F. Supp. 3d 568, 580 (W.D. Tex. 2020) (recognizing associational standing to bring "facial" "content-based," "vagueness," "overbreadth," and "preemption" challenges). Likewise, resolution of the legal questions here under the relevant substantive doctrines does not require any individualized, member-specific analysis. Indeed, the relevant facts in this case are undisputed: Covered platforms—uniformly located outside of Texas and moderating content available across their platforms worldwide—concededly engage in content moderation that H.B. 20 prohibits.

Plaintiffs separately sued to invalidate what Defendant concedes is a "similar"[2] law in Florida—which the Northern District of Florida recently preliminarily enjoined for violating the First Amendment and Section 230 as a matter of law. *NetChoice, LLC v. Moody*, 2021 WL 2690876, *12 (N.D. Fla. June 30, 2021), *appeal pending*, 11th Cir. No. 21-12355. There was no dispute in that case that Plaintiffs have standing to assert the rights of their members against state infringement—because there is no serious argument that Plaintiffs lack standing. Texas never even suggested otherwise in its amicus brief in support of Florida's appeal of Plaintiffs' successful preliminary injunction motion.

---

[1] Unless otherwise noted, references to "Plaintiffs' members" refer to those members covered by, or potentially covered by, H.B. 20. Likewise, all references to "H.B. 20" refer to Sections 2 and 7 of H.B. 20—sections that Plaintiffs challenge.

[2] Brief of the State of Texas, et al., *NetChoice, LLC v. Attorney General, State of Florida*, No. 21-12355, 2021 WL 4237301, at *2 (11th Cir. Sept. 14, 2021).

Yet Defendant's lead argument here is the assertion that "Facebook, Google, YouTube, [and] Twitter" will not be "actually injured as a result of H.B. 20's neutrality and disclosure provisions." Dkt. No. 23, at 3 ("MTD"). But such platforms' injury is plain, as they are the object of H.B. 20's regulation. In all events, at the pleading phase, all the Complaint's allegations must be accepted as true, and Plaintiffs easily assert cognizable Article III injuries. Compl. ¶¶ 140-52; PI Motion at 39-43. Defendant, of course, is free to make (incorrect) legal arguments *on the merits* that H.B. 20 does not infringe Plaintiffs' members' editorial discretion. But the standing inquiry does not permit a premature merits analysis, and Plaintiffs have pleaded concrete injury caused by H.B. 20.

Plaintiffs easily satisfy Article III's standing requirements. The Court should deny Defendant's motion.

## ARGUMENT

"[W]hen standing is challenged on the basis of the pleadings," this Court should "'accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party.'" *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

**I.      Plaintiffs have associational standing to represent their members covered by H.B. 20.**

"Associations may assert the standing of their own members." *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 377 (5th Cir. 2021) (citation omitted). Plaintiffs here meet all three elements necessary to establish such "associational standing": "[1] [their] members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization[s'] purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (quoting *Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000)). The first two prongs are constitutional, "while the third prong is solely prudential." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citation omitted).[3]

### A.      Plaintiffs' members have standing to sue in their own right.

Defendant concedes that Plaintiffs' members include social media platforms, including "Facebook, Google, YouTube, [and] Twitter." MTD at 3; *see* Compl. ¶¶ 15-18. Defendant also concedes that H.B. 20 unquestionably regulates such members. MTD at 3.[4] Plaintiffs' members, therefore, have standing to sue in their own right.

### 1.      As H.B. 20's direct targets, Plaintiffs' members have standing because they intend to engage in activity the statute prohibits and regulates.

Plaintiffs' members plainly have Article III standing because they intend to continue moderating content in part based on viewpoint and do not want to submit to government-imposed onerous disclosure requirements; H.B. 20, however, would prohibit this content moderation and impose onerous disclosure requirements. Compl. ¶¶ 16-18; *see McKinley v. Abbott*, 643 F.3d 403, 407 (5th Cir. 2011) (holding that allegation that plaintiff "has acted and intends to act in a manner

---

[3] Defendant does not dispute Plaintiffs satisfy the second prong. Nor could he. H.B. 20's intrusion on the rights of Internet websites and applications is germane to Plaintiffs' respective interests. *Ass'n of Am. Physicians*, 627 F.3d at 551 ("the germaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose") (citation omitted); *see* Compl. ¶¶ 11-13.

[4] Contrary to Defendant's assertion, Plaintiffs were not required to list each and every particular member that *might* be covered by H.B. 20 in the Complaint. *See Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 269-70 (2015); *cf.* MTD at 3. The Complaint alleges that the definition of "social media platform" under H.B. 20 is vague and could reach many of Plaintiffs' members. *See* Compl. ¶¶ 135-37. A constitutional defect of H.B. 20 that causes injury to Plaintiffs is that the law is vague. *Summers v. Earth Island Institute*, on which Defendant relies, is not to the contrary. 555 U.S. 488 (2009). *Summers* considered a challenge brought by an organization that (1) challenged a regulation that "neither require[d] nor forb[ade] any action on the part of" the organization or its members; (2) alleged "their members' recreational interests"; and (3) only submitted one affidavit relevant to the claim at issue, which itself was held insufficient. *Id.* at 493-95. Thus, *Summers* did not turn on whether all conceivably affected members were expressly identified in the initial complaint, but rather the Court's rejection of an altogether different test: "whether, accepting the organization's self-description of the activities of its members, *there is a statistical probability that some of those members are threatened with concrete injury*." *Id.* at 497 (emphasis added). That is not the case here. To the extent "Plaintiffs must make *specific* allegations establishing that at least one *identified* member had suffered or would suffer harm" (MTD at 4 (citation and quotation marks omitted)), Plaintiffs have easily done so here. Compl. ¶¶ 15-18.

that could violate" speech regulation "established a concrete injury that is actual and imminent").

Injury-in-fact is thus plain: "[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation and quotation marks omitted) (pre-enforcement First Amendment challenge); *see Barilla v. City of Houston*, 13 F.4th 427, 432 (5th Cir. 2021) (holding that such allegations "demonstrate a justiciable injury at the pleading stage"). Where, "in a suit 'challenging the legality of government action,'" an entity is "'an object of the action . . . there is ordinarily little question that the action or inaction has caused [it] injury, and that a judgment preventing or requiring the action will redress it.'" *Texas v. EEOC*, 933 F.3d at 446 (citation omitted).

"There can be no dispute that [Plaintiffs' members] are the object of" the challenged government action because H.B. 20 "singles out" such member companies for regulation. *Time Warner Cable Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012) (citation omitted). "When the government targets certain speakers . . . 'no further showing of suffering . . . is required for purposes of standing.'" *Id.* (citation omitted). By restricting content moderation and targeting members with unique disclosure and operational requirements, H.B. 20 compels Plaintiffs' members to alter how they distribute content. "Government interference with one's attempts to sell or distribute written material unquestionably satisfies Article III's injury-in-fact requirement." *Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012). This automatically gives Plaintiffs' members standing to challenge H.B. 20—regardless of the statute's compliance burdens and other economic harms—simply because Defendant credibly threatens to enforce H.B. 20 against Plaintiffs' members. Compl. ¶¶ 30-35.

### 2. Plaintiffs' members also have standing because H.B. 20 threatens them with classic economic harms.

H.B. 20 also imposes many economic harms that independently give Plaintiffs' members Article III standing to challenge the statute. "[E]conomic injury is a quintessential injury upon which to base standing." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006). Defendant argues that Plaintiffs have not adequately alleged such harms. MTD at 10-11. But Plaintiffs pleaded several.

*First*, "there is no question" about the Plaintiffs' standing if the challenged regulation is "directed at them in particular" and, under threat of sanctions, "requires them to make significant changes in their everyday business practices." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 154 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). H.B. 20's threatened compliance costs are a classic Article III financial injury that alone supports standing. *See Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016) ("complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs" and "[n]o mechanism here exists for [Plaintiffs] to recover the compliance costs they will incur if the [law] is invalidated on the merits") (citation and quotation marks omitted); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (forcing plaintiffs "to take significant and costly compliance measures" supports standing). Plaintiffs' members spent years and significant resources developing large-scale human and algorithmic content-moderation systems. H.B. 20 requires members to completely revamp those systems, at serious expense. Compl. ¶ 20. The statute also imposes a slew of disclosure and operational requirements on covered platforms to (1) collect and report data in a manner sufficient to please every whim of the Texas Attorney General; and (2) provide countless notices and permit burdensome appeals of countless content-moderation decisions. *See* Compl. ¶¶ 99-109; PI Motion at 11-13, 23-26. Complying with these

requirements will likewise require "platforms to engage in operational investment," especially as baseless complaints threaten to overwhelm Plaintiffs' members. Compl. ¶ 108.

*Second*, by forcing member companies to distribute objectionable content, H.B. 20 will also damage their reputations and consumer good will. Plaintiffs have pleaded the commonsense proposition that, without "curation, a social-media site would soon become unacceptable—and indeed useless—to most users" and advertisers. *NetChoice*, 2021 WL 2690876, at *7; *cf.* MTD at 10-12. This will deter advertisers and users, reducing members' advertising revenue. Compl. ¶ 23.

*Third*, H.B. 20 causes Plaintiffs' members competitive harm and additional reputational damage by forcing them to disclose the precise technical mechanisms they use to enforce their policies. These required disclosures include highly sensitive, confidential business information and trade secrets, such as their algorithms and other content-moderation procedures. *Id.* ¶ 21. "The Supreme Court routinely recognizes probable economic injury resulting from governmental actions that alter competitive conditions." *Tex. Ass'n of Mfrs.*, 989 F.3d at 377. Disclosing this information will not only cost members competitive advantage, but will also provide a roadmap for scammers, spammers, predators, and criminals to evade the platforms' moderation. Compl. ¶¶ 21-22; PI Motion at 25. That will make it harder for members to block harmful content, further deterring advertisers and users—reducing revenue even more. Compl. ¶ 22.

Defendant contends that H.B. 20 does not "require[] Plaintiffs' members to produce information in a particular manner." MTD at 13. But that hardly makes the compliance burdens and reputational and competitive harms from disclosure any less sufficient for Article III injury. Moreover, H.B. 20's lack of precision about disclosure just illustrates the statute's unconstitutional vagueness. *See* PI Motion at 30.

### 3. Although the merits of Plaintiffs' claims are irrelevant to standing, the Complaint establishes that H.B. 20 is unconstitutional and preempted.

**a.** Despite H.B. 20's straightforward Article III injuries, Defendant's motion to dismiss spills much ink prematurely raising the merits argument that H.B. 20 does not violate the First Amendment rights of Plaintiffs' members. This merits argument puts the cart before the horse. "[A] plaintiff need not prevail on the merits before he can establish his standing to sue." *Prison Legal News*, 683 F.3d at 212; *see Warth*, 422 U.S. at 500 (Article III "standing in no way depends on the merits"). As the Fifth Circuit has directed, "It is inappropriate for the court to focus on the merits of the case when considering the issue of standing." *Grant ex rel. Fam. Eldercare v. Gilbert*, 324 F.3d 383, 386-87 (5th Cir. 2003); *accord Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 (5th Cir. 2014) (holding that district court improperly "conflated the actual-injury inquiry for standing purposes with the underlying merits of the [Plaintiffs'] constitutional claims").

As discussed above, Plaintiffs' members necessarily have Article III standing because they engage in conduct regulated by H.B. 20, and they face a credible threat of enforcement by the Defendant. Member companies also have standing because they face various concrete economic harms from compliance costs and reputational and competitive injuries that will reduce their advertising revenue. For purposes of Defendant's motion to dismiss, the Court can thus ignore the Defendant's merits arguments.

**b.** Regardless, even assuming—contrary to established law—that the merits of Plaintiffs' claims were relevant to their standing, Plaintiffs have exhaustively alleged how H.B. 20 violates their members' constitutional rights and is otherwise preempted.

Notwithstanding Defendant's premature merits argument (*e.g.*, MTD at 5-10), the platforms have a First Amendment right to enforce their own content-moderation policies

governing what speech to disseminate on their privately owned websites and applications.[5] Compl.

¶¶ 44-60; *see also* PI Motion at 2-6.[6] Through these policies, Plaintiffs' members exercise

"editorial control and judgment," *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974),

to disseminate a "presentation of an edited compilation of speech generated by other persons,"

protected by the First Amendment, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*,

515 U.S. 557, 570 (1995) (citation omitted); *see* Compl. ¶¶ 111-13; PI Motion at 14-18; *NetChoice*,

2021 WL 2690876, at *7 ("they use editorial judgment in making these decisions, much as more

traditional media providers use editorial judgment when choosing what to put in or leave out of a

publication or broadcast").[7] Covered platforms' curated collection of user-submitted content sends

a constitutionally protected message about what content the platforms consider worthy of

presentation and appropriate for their audience of users, both of which depend on the viewpoints

expressed in the submitted content.[8] Compl. ¶ 56; *cf.* MTD at 8-9 (citing public statements related

---

[5] H.B. 20 also violates the First Amendment in other ways besides its direct prohibitions on content moderation. Plaintiffs allege that the statute is content-based in four ways, including its speaker-based distinctions that determine who is even covered by the law. Compl. ¶¶ 118-26; PI Motion at 26-28, 30-36. H.B. 20 imposes further (content-based) disclosure and operational requirements that unconstitutionally intrude on, burden, and chill covered platforms' editorial judgment. Compl. ¶ 113; PI Motion at 23-26. On top of their impermissibly content-based scope, these requirements are also unconstitutional because the First Amendment prohibits a "law that subjects the editorial process to private or official examination merely to satisfy curiosity or to serve some general end such as the public interest." *Herbert v. Lando*, 441 U.S. 153, 174 (1979). In addition, many of H.B. 20's provisions are vague and fail to give Internet websites and applications sufficient notice of whether they are covered by H.B. 20 and what H.B. 20 requires. Compl. ¶¶ 127-39; PI Motion at 28-30.

[6] Though covered platforms have declared their interest in the "exchange of ideas" (as Defendant puts it, MTD at 7), the platforms have never declared that the "exchange of ideas" include *all* ideas or *all* speakers. To the contrary, Plaintiffs pleaded that covered platforms have implemented policies governing acceptable speech on their platforms since their inceptions. Compl. ¶¶ 57-59. And they have determined that the "exchange of ideas" they disseminate on their platforms should not include content expressing, for instance, the hate speech, misinformation, and foreign-government disinformation that H.B. 20 protects. So covered platforms and H.B. 20 do not "have the exact same goal." MTD at 7.

[7] Defendant himself seems to recognize these defects, by pointing to H.B. 20's saving clause. MTD at 6. As addressed *infra* p.10-11, this saving clause does not save H.B. 20 from invalidity.

[8] Defendant insists that Plaintiffs do not engage in constitutionally protected "selection and presentation" of content on their platforms because they are "passive receptacle[s]" for others' speech. MTD at 5 (quoting *Tornillo*, 418 U.S. at 258). Plaintiffs' members are not "passive receptacles," and Plaintiffs have pleaded otherwise. Selecting and presenting content is precisely what covered platforms do. From the moment users post content, Plaintiffs' members review that content and choose whether and how to present it based on their editorial policies. Compl. ¶¶ 46-51; PI Motion at 2-6.

to moderation and erroneously claiming that the platforms have "disclaimed" any messages). This is precisely the same protected message conveyed by diverse compilations of speech disseminated by bookstores, theaters, parade organizers, and editors of encyclopedias, essay collections, journals, and other periodicals.

Defendant bizarrely contends (MTD at 6-7) that H.B. 20 does not affect content moderation, even though this was the entire reason the Legislature enacted H.B.20.[9] H.B. 20's definition of "censor" encompasses every content-moderation tool that covered platforms use, from declining to disseminate certain content based on the expression sought to be posted, to presenting that content in various ways. *See* Compl. ¶ 85; PI Motion at 18-19. H.B. 20 might even prohibit a platform from appending a warning label to certain content based on the message because such a label "otherwise discriminates" against the "viewpoint" expressed. Compl. ¶ 88; PI Motion at 21. Defendant does not disavow this possibility. *Cf.* MTD at 8. And H.B. 20's undefined requirement that platforms not "censor" "viewpoint" reaches virtually all content on the platforms, as all user-submitted content expresses some viewpoint. Compl. ¶ 84; PI Motion at 19.[10]

The breadth of H.B. 20's operative provision against censorship means that the statute's narrow exceptions for moderation permitted by federal law do not save the law from invalidity, and the very inclusion of this saving clause in both H.B. 20 and Defendant's argument demonstrates a recognition of H.B. 20's constitutional flaws. *See* PI Motion at 36-37; *cf.* MTD at

---

[9] Defendant acknowledges that H.B. 20 prohibits content moderation "based on viewpoint," but Defendant then makes a vague reference to platforms' ability to "moderate content pursuant to state and federal law." MTD at 6 (citing Tex. Civ. Prac. & Rem. Code § 143A.006(a)). Whatever the scope of content moderation permitted by this vague exception, H.B. 20's core prohibition on content moderation based on "viewpoint" violates the First Amendment—regardless of how Defendant might define the phrase "content moderation."

[10] Defendant's motion is replete with references to the alleged ills of social media platforms. *E.g.*, MTD at 1, 5 n.4, 7 n.5, 10-11. Those allegations are inflammatory, irrelevant, and otherwise illogical. Indeed, H.B. 20 applies to only certain targeted social media platforms, but not others like Parler, Gettr, or Rumble, all of which have terms, policies and guidelines regarding how they exercise their own editorial discretion via content moderation. Compl. ¶ 60. Moreover, requiring covered platforms to disseminate (for example) pro-Nazi and anti-Semitic content will only exacerbate the ills Defendant claims already exist.

6 (citing Tex. Civ. Prac. & Rem. Code § 143A.006(a)-(b)). Moreover, H.B. 20 does not need to completely ban all types of content moderation by covered platforms for the statute's ban on "viewpoint" moderation to be facially unconstitutional. *Cf.* MTD at 7 (identifying moderation efforts that Defendant purports H.B. 20 does not affect). Any purported unaffected content moderation is irrelevant to this ban's facial invalidity. *E.g.*, *Mance v. Sessions*, 896 F.3d 699, 705 n.23 (5th Cir. 2018) (citing *City of L.A. v. Patel*, 576 U.S. 409, 418 (2015)).

Defendant argues that algorithmic moderation does not produce protected speech. MTD at 5-6. But that is wrong. Algorithms are programmed by *human* editors to reflect the platforms' editorial judgments about acceptable content and its presentation. Because of the covered platforms' large scale, the platforms use computer algorithms to apply their content-moderation standards. Compl. ¶¶ 50-51; PI Motion at 3. So no less than human moderation, the platforms' algorithms communicate what content the platforms deem worthy of presentation and appropriate for their communities. As a result, the First Amendment equally protects "algorithms to screen all content for unacceptable material." *NetChoice*, 2021 WL 2690876, at *8.[11]

Contrary to Defendant's assertion (MTD at 9-10), the inherently expressive content moderation at issue here is unlike the equal-access rule upheld in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* which only regulated a law school's *conduct* of providing military recruiters equal access to campus. 547 U.S. 47, 65 (2006); *see* PI Motion at 21-22. By contrast, H.B. 20 unconstitutionally "compel[s] the platforms to change their own speech . . . including, for

---

[11] *E.g.*, *E-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) ("Google's actions in formulating rankings for its search engine and in determining whether certain websites are contrary to Google's guidelines and thereby subject to removal are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication"); *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 440 (S.D.N.Y. 2014) (dismissing a lawsuit seeking to hold a search engine liable for the "decision to design its search-engine algorithms to favor certain expression on core political subjects over other expression on those same political subjects" because allowing the suit to proceed "would plainly violate[] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message") (alteration in original; citation and quotation marks omitted).

example, by dictating how the platforms may arrange speech on their sites. This is a far greater burden on the platforms' own speech than was involved in *FAIR*[.]" *NetChoice*, 2021 WL 2690876, at *9.

Finally, even if a merits analysis were needed at this point (and it is not), H.B. 20 is also preempted and violates the Commerce Clause. The Communications Decency Act, 47 U.S.C. § 230, categorically preempts H.B. 20 for similar reasons as the First Amendment claim. Compl. ¶¶ 153-63; PI Motion at 37-39. Threatened enforcement of a preempted law is sufficient injury for standing. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). Furthermore, Plaintiffs pleaded that H.B. 20 violates the Commerce Clause (and overlapping aspects of the Due Process and Full Faith and Credit Clauses) as it necessarily regulates extraterritorially in multiple ways. Compl. ¶¶ 140-52; PI Motion at 39-43.

The Complaint more than adequately establishes that Plaintiffs' members have standing to sue in their own right.

**B.   Adjudicating Plaintiffs' claims and awarding their requested relief do not require the participation of their members.**

Plaintiffs sue to block the Attorney General's enforcement of H.B. 20's statutory provisions that are facially unconstitutional. This is therefore a paradigmatic case presenting "pure questions of law," *Friends for Am.*, 284 F.3d at 577; *see Ctr. for Individual Freedom*, 449 F.3d at 662. As explained further below, "because this is a facial challenge to the [state statute], it is unlikely that the proceedings will be fact intensive or that [Plaintiffs'] individual members will be required to participate in this lawsuit." *Nat'l Press*, 504 F. Supp. 3d at 580. Contrary to Defendant's assertions (MTD at 14-22), "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," *Tex. Ass'n of Mfrs.*, 989 F.3d at 377 (quoting *Friends of the Earth*, 528 U.S. at 181).

The third prong of associational standing is merely "prudential," so even if there were any doubt over whether Plaintiffs' claims meet this prong, Plaintiffs still have standing to seek redress for their members' injuries because it would further (and not hinder) "administrative convenience and efficiency." *Ass'n of Am. Physicians*, 627 F.3d at 551 (quoting *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996)).

> 1.   **Plaintiffs' claims present pure questions of law applied to simple, undisputed facts.**

**a.**   Plaintiffs' claims require straightforward application of law to very simple facts: H.B. 20 violates the First Amendment, Commerce Clause, and Section 230, because the statute directly (and extraterritorially) prohibits covered platforms' content-moderation decisions, compels them to provide burdensome disclosures about those decisions, and otherwise changes their operations.[12]

To be even more specific, Plaintiffs assert "facial" challenges based on the doctrines of compelled speech, infringing editorial discretion, a "content-based" and speaker-based law,

---

[12] Defendant does not contend that Plaintiffs lack a cause of action for their First Amendment, vagueness, or Commerce Clause claims. *E.g.*, *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 685-86 (5th Cir. 2010) ("A claim for violation of First Amendment rights must be brought pursuant to 42 U.S.C. § 1983.").

But in a cursory footnote, Defendant argues that Plaintiffs lack a cause of action for their preemption claim. Defendant misconstrues the holding in *Armstrong v. Exceptional Child Ctr., Inc.*—which does not foreclose Plaintiffs' ability to bring a preemption claim regarding Section 230 under 42 U.S.C. § 1983 or *Ex Parte Young*. 575 U.S. 320, 327 (2015). *See* Compl. ¶¶ 153-63; *cf.* MTD at 16 n.9. Regardless, at this pleading stage (a motion to dismiss solely for lack of standing), this Court need not consider whether Plaintiffs additionally have a Section 230 preemption cause of action because Plaintiffs can bring a preemption claim under *Ex Parte Young*'s equitable cause of action: (1) Plaintiffs plead "an ongoing violation of federal law and seek[ ] relief properly characterized as prospective"; and (2) Defendant has sufficient connection ("some connection") to H.B. 20, because H.B. 20 vests enforcement authority in the Texas Attorney General. *Air Evac EMS, Inc. v. Tex. Mut. Ins. Co.*, 851 F.3d 507, 516-17 (5th Cir. 2017) (citation and quotation marks omitted); *see* Tex. Bus. & Com. Code § 120.151; Tex. Civ. Prac. & Rem. Code § 143A.008 (Attorney General enforcement authority); *see also* Compl. ¶¶ 38, 41 (invoking this Court's equitable authority).

Furthermore, *Armstrong* did not foreclose a Section 230 preemption claim under 42 U.S.C. § 1983, as it simply held that the Supremacy Clause does not provide a self-executing cause of action for preemption claims. 575 U.S. at 327. Here, Plaintiffs have properly asserted a Section 1983 cause of action. *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 n.4 (1989) ("a Supremacy Clause claim based on a statutory violation is enforceable under § 1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff") (citation omitted). In all events, Plaintiffs' preemption claim is not a fact-intensive question; rather, it requires the application of typical rules of statutory construction. *Cf.* MTD at 16 n.9.

"vagueness," "overbreadth," "preemption," and extraterritorial regulation. *Nat'l Press*, 504 F. Supp. 3d at 580. Each doctrine renders the challenged H.B. 20 provisions facially invalid. *See id.*; *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2378 (2018) (sustaining content-based facial challenge based on compelled speech); *Tornillo*, 418 U.S. at 258 (sustaining content-based facial challenge based on infringing editorial discretion); *Ass'n for Accessible Medicines v. Frosh*, 887 F.3d 664, 668 (4th Cir. 2018) (a "state law violates the extraterritoriality principle if it [] *expressly applies* to out-of-state commerce") (emphasis added);[13] *Garza v. Wyeth LLC*, 2015 WL 364286, at *4 (S.D. Tex. Jan. 27, 2015) ("The preemption decision is not evidence-based but is rather a question of law.").[14]

Adjudicating these claims does not require individualized facts about any particular covered social media platform: (1) "[N]o set of circumstances exists under which [H.B. 20] would be valid"; (2) the law "lacks a plainly legitimate sweep"; (3) H.B. 20 is fatally overbroad, as "a substantial number of [H.B. 20's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (citations and quotation marks omitted) (identifying alternative tests).

As Fifth Circuit caselaw makes clear, "a facial challenge to the constitutionality of a statute presents a pure question of law." *Ctr. For Individual Freedom*, 449 F.3d at 662; *e.g.*, *Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 441 (5th Cir. 2014) (en banc) (failing strict scrutiny means that the "provisions at issue are facially invalid under the First

---

[13] *E.g.*, *McLemore v. Gumucio*, 2019 WL 3305131, at *9 (M.D. Tenn. July 23, 2019) ("The Court finds that the statute is likely an impermissible *per se* violation of the Dormant Commerce Clause."); *Winery v. Wilcher*, 2006 WL 8449122, at *2 (W.D. Ky. Feb. 7, 2006) ("the court must construe the statutes in question to determine whether they run afoul of the commerce clause, a purely legal inquiry").

[14] *E.g.*, *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019); *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 84 (2d Cir. 2015); *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 364 (3d Cir. 2012); *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1124 (7th Cir. 2008); *Glob. Naps, Inc. v. Verizon New England, Inc.*, 444 F.3d 59, 69 (1st Cir. 2006).

Amendment"). Consequently, "whether a state statute violate[s] the First Amendment" and "[w]hether a state statute violated the dormant Commerce Clause" are both "pure questions of law" supporting associational standing. *Friends for Am.*, 284 F.3d at 577 (citations omitted). And associations likewise can thus raise preemption challenges without the participation of their members. *E.g.*, *Nat'l Press*, 504 F. Supp. 3d at 580; *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1079 (9th Cir. 2017).

As for Plaintiffs' vagueness claim, Defendant argues this requires platform-specific inquiry. MTD at 16. But Plaintiffs have alleged H.B. 20's vagueness arises not from some factually disputed, specific application to Plaintiffs' members, but rather from the facially vague terms of H.B. 20. Compl. ¶¶ 127-39. A facial vagueness challenge "presents a pure question of law." *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009). No member-specific facts are relevant to whether H.B. 20 provides people of ordinary intelligence fair notice of its meaning. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). And if H.B. 20 is vague, then necessarily "it is vague in all its applications." *Johnson v. United States*, 576 U.S. 591, 603 (2015). To the extent Plaintiffs' vagueness claims suggest certain provisions are "vague as-applied" to certain members, such vagueness assertions do not require invasive consideration of all members' circumstances. For instance, H.B. 20's definition of "social media platform" is unclear, meaning the scope of H.B. 20's prohibition is unsettled even if there are platforms to which H.B. 20 plainly applies. Tex. Bus. & Com. Code § 120.001(1); *see* Compl. ¶ 81; PI Motion at 35.

    **b.**    Defendant's motion on this prong also raises premature merits arguments, which are all unavailing in any event.

Defendant objects that H.B. 20 should instead be subject to intermediate scrutiny, which Texas considers a fact-intensive inquiry. MTD at 15. This is a premature merits argument. And it

ignores the myriad ways that H.B. 20 violates the First Amendment *per se* and is otherwise content-based and subject to strict scrutiny, as Plaintiffs explained in detail in their preliminary-injunction motion. *See* PI Motion at 26-28. Regardless, intermediate scrutiny is not fact-intensive—at least it does not require any fact discovery from *Plaintiffs or their members*. Rather, it requires considering: (1) whether *the state* has an "an important or substantial governmental interest," a legal question; (2) whether "the *governmental* interest is unrelated to the suppression of free expression," which is a legal question; and (3) whether "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest," which will not vary plaintiff-to-plaintiff. *Time Warner Cable*, 667 F.3d at 641 (emphasis added; quotation marks omitted) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994)). H.B. 20 cannot pass intermediate scrutiny either.

Texas further contends that a threshold question for only Plaintiffs' First Amendment claim—but not any other claims—is whether the platforms are common carriers. MTD at 15; *see also* Dkt. No. 20, at 3-5 (Def. Motion for Expedited Discovery). This is also a premature merits argument. Regardless, this argument misstates relevant First Amendment law, as Plaintiffs detailed in both their preliminary-injunction motion (PI Motion at 31-32) and their response to Defendant's motion for expedited discovery (Dkt. No. 22, at 7-8). Plaintiffs' members are not common carriers as a matter of law because they do not, and have not, simply transmitted data "indifferently"—a fundamental and centuries-old requirement for common-carrier status, *e.g.*, *Allen v. Sackrider*, 37 N.Y. 341, 342 (1867) (collecting authorities); *see also* PI Motion at 32.[15] More fundamentally,

---

[15] Consequently, state and federal courts have consistently held that companies like (and including) the covered platforms are not common carriers. *E.g.*, *Howard v. America Online, Inc.*, 208 F.3d 741, 753 (9th Cir. 2000) (AOL not "common carrier"); *Kinderstart.com LLC v. Google, Inc.*, 2006 WL 3246596, at *10-11 (N.D. Cal. July 13, 2006) (Google not "common carrier"); *Millan v. Facebook, Inc.*, 2021 WL 1149937, at *3 (Cal. Ct. App. Mar. 25, 2021) (unpublished) ("Facebook does not satisfy the definition of a 'common carrier.'").

even if Plaintiffs' members do or had done so, common-carrier status does not alter the First Amendment, Commerce Clause, or Section 230 analysis: "a common carrier scheme has no real First Amendment consequences," so "impos[ing] a form of common carrier obligation" cannot justify H.B. 20's unconstitutional restrictions. *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 824-26 (1996) (Thomas, J., concurring in judgment in part and dissenting in part); *see also NetChoice*, 2021 WL 2690876, at *8 (evaluating common-carrier arguments without discovery); PI Motion at 31-32 (collecting cases). Defendant makes no attempt to address these fatal flaws to his argument. This is so because he cannot.

### 2. Plaintiffs have requested straightforward relief: enjoining Defendant from enforcing H.B. 20 against Plaintiffs' members.

Plaintiffs' appropriately limited prayer for declaratory and injunctive relief does not require specific proof for each of Plaintiffs' members regulated by H.B. 20. H.B. 20 infringes covered social media platforms' rights in the same way regardless of the particular platform. The proper remedy for H.B. 20's unlawfulness is to enjoin the Texas Attorney General from enforcing H.B. 20 against Plaintiffs' members. Consequently, Plaintiffs have requested a remedy that "operate[s] with respect to specific parties"—Plaintiffs' members affected by H.B. 20 and the Texas Attorney General. *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring)). This requested relief avoids any issues regarding "universal injunctions" applicable to non-parties. *Cf.* MTD at 17.

It is true that Plaintiffs have requested an injunction simply for their members—rather than a "universal" injunction applying to non-parties. PI Motion at 2, 45. But Plaintiffs' request for a tailored remedy cannot change the fact that they are raising pure legal questions on the merits that do not require individualized proof from any member. Defendant insists, however, that Plaintiffs cannot vindicate the federal rights of their members because their purportedly "as-applied" claims

depend on member-specific facts. MTD at 1, 14-19. This argument both misconstrues Plaintiffs' claims and misstates the importance of the "as-applied" (versus "facial") label. As explained by both the Supreme Court and Fifth Circuit, these labels do not control the fundamental nature of Plaintiffs' claims or the scope of appropriate relief. *E.g.*, *Citizens United v. FEC*, 558 U.S. 310, 331 (2010) ("the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. . . . [I]t goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint[.]"); *id.* ("[O]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases") (alteration in original; quotation marks and citation omitted); *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) ("The label is not what matters."); *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 425-26 (5th Cir. 2014) ("the precise boundaries of facial and as-applied challenges are somewhat elusive—certain challenges can have characteristics of both").

Ultimately, a request for "[i]njunctive relief 'does not make the individual participation of each injured party indispensable to proper resolution'"—so where Plaintiffs seek injunctive relief and "adduce[] evidence that [their] members [are] affected by the" law, Plaintiffs have standing. *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 505 (5th Cir. 2021) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977)). Plaintiffs' "request[s] for declaratory and injunctive relief" do not "require[] individualized proof and both are thus properly resolved in a group context," *Hunt*, 432 U.S. at 344—because "once proved as to some, the violations would be proved as to all," *Ass'n of Am. Physicians*, 627 F.3d at 552; *accord Friends for Am.*, 284 F.3d at 577 (collecting cases).

II.     **Plaintiffs also have organizational standing.**

In addition to their associational standing, Plaintiffs have independent standing to challenge H.B. 20's Internet-wide regulation. Plaintiffs have been forced to devote "pre-litigation" resources to educate the public and state legislators about how the social media platforms operate and the negative effects of H.B. 20 on the platforms. Compl. ¶ 14; *see OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017).

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss.

Dated: October 28, 2021                              Respectfully submitted,

                                                                  */s/ Scott A. Keller*

Steven P. Lehotsky*                                  Scott A. Keller (Texas Bar # 24062822)
steve@lehotskykeller.com                       scott@lehotskykeller.com
Jonathan D. Urick*                                   Matthew H. Frederick (Texas Bar # 24040931)
jon@lehotskykeller.com                           matt@lehotskykeller.com
Jeremy Evan Maltz (Texas Bar # 24102129)   Todd Disher (Texas Bar # 24081854)
jeremy@lehotskykeller.com                     todd@lehotskykeller.com
Gabriela Gonzalez-Araiza*                       LEHOTSKY KELLER LLP
gabriela@lehotskykeller.com                   919 Congress Ave.
LEHOTSKY KELLER LLP                             Austin, TX 78701
200 Massachusetts Avenue, NW               T: (512) 693-8350
Washington, DC 20001                             F: (833) 233-2202

*Admitted *pro hac vice*

19

## **CERTIFICATE OF SERVICE**

I certify that on October 28, 2021, the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Todd Disher*
Todd Disher