# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NetChoice, a 501(c)(6) District of Columbia organization, <br><br> and <br><br> COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION d/b/a CCIA, a 501(c)(6) non-stock Virginia Corporation, <br><br> *Plaintiffs*, <br><br> v. <br><br> KEN PAXTON, in his official capacity as Attorney General of Texas, <br><br> *Defendant*. | Civil Action No. 1:21-cv-00840-RP |

## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Plaintiffs respectfully move the Court for a protective order because Defendant's allegedly amended discovery requests continue to be far from "narrowly-tailored," as this Court required. Dkt. No. 25, at 4 ("Order").

In connection with this Court's Order for limited discovery relating to Plaintiffs' motion for a preliminary injunction, the parties spent nearly a week negotiating "the breadth and timing of any such discovery," as expected by the Court. Order at 4. Over that week, Plaintiffs have offered the depositions of the individuals who submitted declarations supporting Plaintiffs' preliminary-injunction motion. Exhibit A at 3, 8, 9. Specifically, these depositions are from Plaintiffs themselves (one declarant each from NetChoice and CCIA), two of their members (one declarant each from Facebook and YouTube), and the other third-party non-members. Plaintiffs have relied on the facts contained in those declarations—along with publicly available documents, many of which are cited in the declarations themselves—in their request for a preliminary injunction. To accommodate Defendant, Facebook, YouTube, Stop Child Predators, Technology Network, and LGBT Technology Institute have also voluntarily agreed to produce their five witnesses for depositions and to produce any nonprivileged documents that those witnesses relied on in drafting their declarations.

In addition to depositions and document production, Plaintiffs have also offered to consider stipulations and admissions to material facts for issues that Defendant claims are in dispute. *Id.* at 12, 13. And Plaintiffs have agreed to respond to Defendant's proposed "tailored" interrogatories. *Id.* at 3. Thus, Plaintiffs have agreed to more than adequate discovery to "aid Defendant in responding to the PI motion," as authorized by this Court. Order at 3.

Throughout those negotiations, Defendant has continued to make wide-ranging document requests that are not substantially different from the requests the Court found were "not sufficiently

tailored" and would cause burden "without good cause." Order at 4. Recently, the parties discussed limiting additional document production to only Facebook and YouTube as a solution to end this discovery dispute. Yesterday, Defendant seemed willing to agree to that narrowing, requesting "responses to [certain requests for production] by Facebook and YouTube." Exhibit A at 4. Although Facebook and YouTube have not agreed to accommodate those cited requests—as they are still far too broad, not narrowly tailored, overly burdensome, and seek information that is not relevant and privileged—YouTube and Facebook offered to agree to additional document production categories in an effort to resolve this discovery dispute. *Id.*

In response, Defendant broke off negotiations and indicated his intent to send the requests for production as drafted *before the start of the parties' negotiations*. And Defendant indicated that he is going to send those third-party subpoenas to *all of the eight members* that Defendant originally targeted after the Order—despite appearing to refine the discovery requests to just the entities that provided evidence in support of Plaintiffs' motion for preliminary injunction.

Thus, Defendant has done almost nothing to limit the requests that this Court already found were "not sufficiently tailored and would [have] burden[ed] Plaintiffs without good cause." Order at 3-4. Although the Court was "confident that Defendant will *significantly tailor* its discovery requests," *id.* at 4 (emphasis added), Defendant deleted just *one* proposed request for production and *one* proposed interrogatory. Defendant continues to press for expedited production of millions of immaterial documents from non-parties. For example, Defendant wants: "All documents and communications, including recordings, minutes, and documents reflecting team meetings, related to [Plaintiffs' members'] content moderation policies and practices." Exhibit B. This implicates every facet of the covered platforms' operations over billions of examples of user submissions. For instance, "500 hours of content are uploaded every minute" to YouTube. Dkt. No. 12-3, ¶ 3

(YouTube Decl.). Similarly, "[u]sers of Facebook's products share over a billion stories and over 100 billion messages, every day." Dkt. No. 12-4, ¶ 2 (Facebook Decl.). And this request for "all" content-moderation "documents and communications" is just one of Defendant's eight (similar) requests for production to be inflicted upon non-party members of Plaintiffs, many of whom have not participated in this case.

At base, Defendant cannot meet his burden to show good cause and narrowly tailored expedited discovery requests as to these non-party members. Plaintiffs respectfully request that the Court enter the attached proposed protective order.

## ARGUMENT

**I.   Plaintiffs offered discovery from all the fact witnesses asserted in their preliminary-injunction motion—while Defendant continues to seek discovery into millions of irrelevant documents.**

**A.**   Plaintiffs have proposed an expedited discovery plan for "targeted requests to obtain precise information without burdening Plaintiffs' members" calculated to enable Defendant to respond to Plaintiffs' motion for a preliminary injunction, as this Court directed. Order at 4. Because Plaintiffs have proffered certain facts through their preliminary-injunction declarations, Plaintiffs have offered to allow Defendant to depose those declarants and receive the nonprivileged documents that the declarants relied on when drafting their declarations.

The entire reason any expedited discovery is justified at this phase is because Plaintiffs moved for a preliminary injunction and proffered certain fact witnesses through their declarations. After Plaintiffs moved for a preliminary injunction, Defendant moved for expedited discovery, proposing extraordinarily broad discovery requests for 37 of Plaintiffs' combined members. Dkt. No. 20. And Defendant also requested that the Court extend Defendant's deadline to file his response to Plaintiffs' motion until after Texas House Bill 20 ("H.B. 20") took effect. Dkt. No. 21.

3

The Court ordered that it "expects the parties to reach agreements about the breadth and timing of any such discovery"—but was clear that it "will not shift the briefing or hearing schedule, absent extraordinary circumstances." Order at 4. Therefore, the Court ordered that Defendant's opposition brief shall be filed on November 22, 2021, and it did not grant Defendant's motion for expedited discovery in full because Defendant's requests were "not sufficiently tailored and would [have] burden[ed] Plaintiffs without good cause." *Id.* at 3-4. Instead, the Court authorized limited discovery into facts "that will aid Defendant in responding to the PI motion." *Id.* at 3.

Plaintiffs' proposed expedited discovery into all the facts Plaintiffs used to support their PI motion—*i.e.*, depositions of their declarants, as well as nonprivileged documents they used for their declarations—is wholly sufficient for Defendant to "respond[] to the PI motion." *Id.*

**B.**     Nevertheless, Defendant has rejected Plaintiffs' proposal for expedited discovery into all the facts Plaintiffs asserted in their PI motion. Instead, Defendant continues to request more documents than he could hope to review before his response brief is due—and far more than he could review before deposing the parties he wishes to depose.

Defendant still has not explained how his discovery requests—which are now focused almost exclusively on the content-moderation practices of Plaintiffs' members—are relevant to any issue in the pending preliminary injunction. And Defendant still has not heeded this Court's order to "*significantly tailor* its discovery requests." *Id.* at 4 (emphasis added). Defendant continues to ask for production seeking multiple categories of "all documents and communications," without any temporal limitation, and without any meaningful tailoring (save excising one category of documents, apparently related to the alleged status of Plaintiffs' members as common carriers).

Specifically, Plaintiffs have reproduced Defendant's requests for production, along with an explanation below of why each request is irrelevant:

4

1. All documents and communications, including recordings, minutes, and documents reflecting team meetings, related to [COMPANY'S] content moderation policies and practices.

   - Content moderation over billions of pieces of content is a core function of the covered platforms, and thus this request for "all documents" would apply to millions of documents. Moreover, not even a single further document would add to the Defendant's ability to respond to the motion for a preliminary injunction. These documents and communications could also implicate Plaintiffs' members' trade secrets. There is also no time or custodian limitation on this request.

2. All documents and communications related to [COMPANY'S] current reporting and disclosure obligations under federal and/or state law.

   - Again, this request for "all documents" without a time or custodian limitation is overbroad. Moreover, these documents would not be relevant to Plaintiffs' claims that disclosure of covered platforms' *editorial* policies violates the First Amendment.

3. Offline copies of all git repositories, including version and commit history, related to content moderation.

   - This is a request to see all changes in covered platforms' code over time, thereby disclosing the proprietary—and irrelevant to the legal issues in his case—technical means by which Plaintiffs' covered members engage in content moderation. This too would encompass countless individual pieces of information. And, as stated above, it is not necessary for this Court or Defendant to know the precise technological means by which covered platforms engage in (what H.B. 20 calls) "viewpoint censorship," because platforms *admit* they do what H.B. 20 prohibits. Moreover, these documents include important trade secrets.

4. Training data sets for all machine learning models employed for purposes of content moderation to the extent they are not contained in documents produced in response to No. 3.

   - It is not clear why this information is relevant or necessary for the preliminary injunction, and the additional language does not meaningfully limit the request.

5. All wiki, README, or similar documentation related to software utilized for content moderation from 2019-present.

   - It is not clear why this information is relevant or necessary for the preliminary injunction.

6. Any issues, user stories, epics, tasks, themes or initiatives* created in relation to content moderation of your platform. [*To the extent the respondent requires keywords to comply with this request, respondent should confer with Defendant on those keywords]

- These terms are entirely undefined and unclear. But, to the extent they relate to routine content moderation, this request could encompass countless documents (and would already be covered by the overbroad first request).

7. Current workflow diagrams to the extent they are not contained in documents produced in response to No. 5.

    - It is not clear why this is relevant or necessary (or even what "workflow diagrams" is meant to reference), and the additional language does not meaningfully limit the request.

8. All documents and communications containing studies, inquiries and/or statements as to advertiser retention being affected by user content allowed on [COMPANY'S] platform.

    - Plaintiffs have already provided such documents in declarations. *E.g.*, Dkt. No. 12-1, at ¶ 28 (CCIA Decl.); Dkt. No. 12-2, at ¶¶ 9, 16-17 (NetChoice Decl.).

Exhibit B-I.

These requests are far from "narrowly tailored" to the issues needed to resolve Plaintiffs' preliminary-injunction motion. Order at 3.

**II.   Additional discovery would be improper because Plaintiffs raise facial challenges based on pure legal questions that do not require individualized proof from specific members, and Defendant's discovery requests implicate the precise First Amendment harms H.B. 20 seeks to impose on covered social media platforms.**

Plaintiffs have agreed to the expedited discovery explained above, and that reasonable agreement should not be expanded upon for two crucial, additional reasons. First, Plaintiffs' preliminary-injunction motion raises pure legal questions that do not require individualized proof from specific Plaintiffs' members. Discovery from the declarants is sufficient to address whatever standing and irreparable-injury points Defendant believes are necessary. Second, Defendant's discovery request also treads heavily on the precise First Amendment rights placed at issue by H.B. 20—that is, government-mandated disclosures piercing into the editorial discretion exercised by covered speech-disseminating private actors.

   **A.**   Expedited discovery should be properly cabined because adjudicating Plaintiffs'

claims on the merits and awarding their requested relief does not require individualized information from Plaintiffs' members. Plaintiffs' merits arguments raise "facial" challenges to H.B. 20: whether H.B. 20 (1) violates the First Amendment; (2) is preempted by 47 U.S.C. § 230; and (3) regulates extraterritorially in violation of the Dormant Commerce Clause. *See generally* Dkt. No. 12 ("PI Motion"). And "a facial challenge to the constitutionality of a statute presents a pure question of law." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006).

To be even more specific, Plaintiffs assert "facial" challenges based on the doctrines of compelled speech, infringing editorial discretion, a "content-based" and speaker-based law, "vagueness," "overbreadth," "preemption," and extraterritorial regulation.[1] *Nat'l Press Photographers Ass'n v. McCraw*, 504 F. Supp. 3d 568, 580 (W.D. Tex. 2020); *see, e.g.*, *National Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2378 (2018) (sustaining facial challenge based on compelled speech); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (sustaining facial challenge based on infringing editorial discretion). In fact, the First Amendment doctrines invoked by Plaintiffs—which allow facial challenges—exist precisely to facilitate cases with "minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." *FEC v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 469 (2007) (controlling plurality op. of Roberts, C.J.). Similarly, preemption and the extraterritorial application of a statute are pure legal questions. *E.g., Ass'n for Accessible Medicines v. Frosh*, 887 F.3d 664, 668 (4th Cir. 2018) (a "state law violates the extraterritoriality principle if it [] *expressly applies* to out-of-state commerce") (emphasis added); *Garza v. Wyeth LLC*, 2015 WL

---

[1] This case requires resolution of familiar First Amendment arguments, none of which requires highly individualized information from any particular social media platform: (1) "'no set of circumstances exists under which [H.B. 20] would be valid'"; (2) the law "lacks 'a plainly legitimate sweep'"; (3) and H.B. 20 is fatally overbroad, as "a substantial number of [H.B. 20's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (internal citations omitted) (laying out alternative tests).

7

364286, at *4 (S.D. Tex. Jan. 27, 2015) ("The preemption decision is not evidence-based but is rather a question of law.").

Facial challenges do not require individualized proof from specific association members: "[B]ecause this is a facial challenge to the [state statute], it is unlikely that the proceedings will be fact intensive or that [Plaintiffs'] individual members will be required to participate in this lawsuit." *Nat'l Press*, 504 F. Supp. 3d at 580.

Similarly, Plaintiffs' requested injunctive relief for those violations—an injunction blocking Defendant from enforcing H.B. 20 against Plaintiffs' covered members—does not depend on individualized proof from specific social media platforms. Plaintiffs' "request[s] for declaratory and injunctive relief" do not "require[] individualized proof and both are thus properly resolved in a group context." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977). That is because "once proved as to some, the violations would be proved as to all." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010). Relatedly, a request for "[i]njunctive relief 'does not make the individual participation of each injured party indispensable to proper resolution[.]'" *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 505 (5th Cir. 2021) (quoting *Hunt*, 432 U.S. at 333); *accord, e.g.*, *Nat'l Press*, 504 F. Supp. 3d at 580.

It is true that Plaintiffs have requested an injunction simply for their members—rather than a "universal" injunction applying to non-parties. PI Motion at 2, 45. But Plaintiffs' request for a tailored remedy cannot change the fact that they are raising pure legal questions on the merits that do not require individualized proof from any member.

Fundamentally, none of Defendant's discovery requests is designed to obtain information resolving material factual disputes. Plaintiffs have affirmatively alleged—and would stipulate to and admit, if Defendant would accept Plaintiffs' offer—that Plaintiffs' covered-platform members

8

remove user-submitted content from their platforms based on "viewpoint" (which is directly prohibited by H.B. 20). *How* those platforms moderate content, and what *kinds* of viewpoints those platforms moderate simply does not matter, as H.B. 20 prohibits all moderation based on viewpoint. It is a pure question of law whether this violates the First Amendment and Section 230.

      **B.**    Furthermore, Defendant's discovery requests present the same harms that H.B. 20 would inflict on Plaintiffs' members—the unconstitutional and preempted infringement of editorial discretion over speech dissemination. As Plaintiffs' PI Motion discusses, disclosure of internal documents and communications regarding how covered platforms exercise their editorial judgments inflicts First Amendment harms. *See* PI Motion at 14-18.

This implicates First Amendment protections regardless of whether disclosure is compelled by statute or by litigation discovery. When it comes to litigation discovery, courts routinely recognize that a party resisting discovery only needs to make a "prima facie" case of a First Amendment interest to trigger heightened burdens for discovery. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010); *see Ohio A. Philip Randolph Inst. v. Larose*, 761 F. App'x 506, 514-15 (6th Cir. 2019) (affirming trial court applying *Perry*); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) ("when the subject of a discovery order claims a First Amendment privilege not to disclose certain information"); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 2016 WL 5922315, at *6 (W.D. Tex. Oct. 11, 2016) (applying *Perry*). So, as is true in the context of government-mandated disclosure, discovery cannot "subject[] the editorial process to private or official examination merely to satisfy curiosity or to serve some general end such as the public interest." *Herbert v. Lando*, 441 U.S. 153, 174 (1979).[2]

---

[2] Although *Herbert* disclaimed an "absolute" privilege against such discovery, it recognized a qualified privilege, hence the burden-shifting frameworks. 441 U.S. at 174; *see, e.g.*, *In re Motor Fuel Temperature Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1151-53 (D. Kan. 2010); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 172-73 (E.D.N.Y. 1988) (*Herbert* identified a qualified privilege).

9

Plaintiffs have discussed the First Amendment burdens of disclosure at length in their preliminary-injunction motion (at 14-23) and complaint (at ¶¶ 110-26). To briefly summarize here, covered platforms engage in the "exercise of editorial control and judgment," *Tornillo*, 418 U.S. at 258, to disseminate a "presentation of an edited compilation of speech generated by other persons," protected by the First Amendment, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 570 (1995) (citation omitted). *See also NetChoice, LLC v. Moody*, 2021 WL 2690876, *7 (N.D. Fla. June 30, 2021), *appeal pending*, 11th Cir. No. 21-12355 ("they use editorial judgment in making these decisions, much as more traditional media providers use editorial judgment when choosing what to put in or leave out of a publication or broadcast."). Because they "exercise[] editorial discretion in the selection and presentation" of content—through determining what content is acceptable and how it is displayed—they "engage[] in speech activity" protected by the First Amendment. *Ark. Educ. TV Comm'n v. Forbes*, 523 U.S. 666, 674 (1998).

Under whatever heightened standard might apply, discovery beyond Plaintiffs' sensible proposal discussed above is unwarranted. Defendant cannot meet any heightened standard for discovery beyond depositions of the preliminary-injunction declarants and the documents they used. *See, e.g.*, *Perry*, 591 F.3d at 1161; *Grandbouche*, 825 F.2d at 1466; *Wal-Mart Stores*, 2016 WL 5922315, at *6. And this is on top of the fact that Defendant was already under a duty to "narrowly tailor[]" its discovery requests. Order at 3. Defendant has not come close to satisfying these heightened standards, and Plaintiffs respectfully request that the Court adopt Plaintiffs' plan for expedited discovery discussed above.

## CONCLUSION

Plaintiffs respectfully request that this Court enter the attached proposed protective order.

Dated: October 28, 2021                    Respectfully submitted,

*/s/ Scott A. Keller*

| | |
|---|---|
| Steven P. Lehotsky* | Scott A. Keller (Texas Bar # 24062822) |
| steve@lehotskykeller.com | scott@lehotskykeller.com |
| Jonathan D. Urick* | Matthew H. Frederick (Texas Bar # 24040931) |
| jon@lehotskykeller.com | matt@lehotskykeller.com |
| Jeremy Evan Maltz (Texas Bar # 24102129) | Todd Disher (Texas Bar # 24081854) |
| jeremy@lehotskykeller.com | todd@lehotskykeller.com |
| Gabriela Gonzalez-Araiza* | LEHOTSKY KELLER LLP |
| gabriela@lehotskykeller.com | 919 Congress Ave. |
| LEHOTSKY KELLER LLP | Austin, TX 78701 |
| 200 Massachusetts Avenue, NW | T: (512) 693-8350 |
| Washington, DC 20001 | F: (833) 233-2202 |

*Admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

I certify that on October 28, 2021, the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Todd Disher*
Todd Disher

## **CERTIFICATE OF CONFERENCE**

The parties had extensive negotiations over the "breadth and timing" of discovery in advance of the Court ruling on the motion for preliminary injunction. The substance of those negotiations is included in the email correspondence attached as Exhibit A. After a week's worth of negotiations, Defendant broke off those discussions and indicated its intent to serve eight third-party subpoenas that are not "significantly tailored" from their original request. Defendant opposes this motion.

*/s/ Todd Disher*
Todd Disher