IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NETCHOICE, LLC d/b/a NetChoice, a 501(c)(6) District of Columbia organization, <br><br> and <br><br> COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION d/b/a CCIA, a 501(c)(6) non-stock Virginia Corporation, <br><br> *Plaintiffs*, <br><br> v. <br><br> KEN PAXTON, in his official capacity as Attorney General of Texas, <br><br> *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:21-cv-00840-RP |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER

Defendant leads off his response with a fundamental misstatement when he claims that "Plaintiffs believe their members entitled [sic] to *complete safeguarding* from the proposed discovery this Court *permitted*." Dkt. No. 34 at 1 (emphasis added) ("Resp. Br."). Plaintiffs *have* offered discovery into the facts put at issue in their motion for a preliminary injunction—including extensive discovery from the two members that submitted supporting declarations. And the Court permitted only "narrowly tailored requests" necessary for Defendant to "discover information it needs to prepare its opposition to the PI motion." Dkt. No. 25 at 4 ("Order"). Defendant cannot meet his burden to show good cause at this point in the litigation to request such wide-ranging requests for "all documents and communications" related to every facet of Plaintiffs' members' operations.

*First*, after a week of negotiation, Plaintiffs have agreed to produce the full scope of facts that Plaintiffs' motion for a preliminary injunction put at issue in this expedited-discovery posture. That agreement includes:

(1) Depositions of all seven witnesses who provided declarations in support of Plaintiffs' motion for preliminary injunction, including two of Plaintiffs' members;

(2) Production of all nonprivileged documents those witnesses relied upon (cited and uncited) when drafting their declarations;

(3) Responses to two interrogatories directed at Plaintiffs themselves regarding the content-moderation practices of certain Plaintiffs' members; and

(4) Any admissions, stipulations, or additional interrogatories that would further narrow any potential disputes between the parties.

In addition, during those negotiations YouTube and Facebook—the only two members of Plaintiffs that submitted facts in support of the motion for preliminary injunction—offered to agree to produce additional categories of documents to resolve this discovery dispute. *See* Exhibit J.

What Plaintiffs are not willing to do—and what they have no authority to do—is to agree to expansive requests for production from nonparty member companies that implicate millions of

documents, every aspect of the companies' operations, and the very First Amendment rights at issue in this case. And Defendant says *nothing* to deny the breadth of his document requests.

*Second*, this Court has not yet sanctioned Defendant's specific proposed requests. As this Court made clear, Defendant must "*significantly tailor* its discovery requests." Order at 4 (emphases added). In response, Defendant deleted just *one* of the requests that the Court found were "not sufficiently tailored and would burden Plaintiffs without good cause." Order at 4. And Defendant did not change the language of *any* of the other eight. Requesting "all documents and communications" are not "targeted" requests for "precise information."

The Court also ordered that Defendant's discovery requests should be for information Defendant "needs to prepare its opposition to the PI motion." *Id.* For the first time in his opposition to Plaintiffs' motion for protective order, Defendant articulated rationales for his document requests, which all rest on an indefensible position: That *Defendant* must determine, based on millions of documents, that Plaintiffs engage in the kind of content moderation that House Bill 20 ("H.B. 20") directly forbids. *See* Resp. Br. at 3-6. This is in spite of the fact that H.B. 20 itself is premised on the idea that the covered platforms moderate content based on "viewpoint." None of Defendant's rationales carry his burden to show good cause.

1. All documents and communications, including recordings, minutes, and documents reflecting team meetings, related to [COMPANY's] content moderation policies and practices.

    > Defendant has not demonstrated that this request for millions of documents is necessary to respond to what Defendant considers Plaintiffs' arguments: "Plaintiffs claim the way their members moderate content constitutes speech, they all do it in a unique way and they do not hold their platforms open to everyone." *Id.* at 4. These questions do not require any discovery to answer. First, Plaintiffs assert that they engage in protected editorial discretion—a question of law that only requires application of settled law to the uncontroverted fact that covered platforms have content-moderation policies. *See* Dkt. No. 12, at 2-6, 14-23 ("PI Motion"). Second, the fact that each platform moderates policy "in a unique way" is verifiable by viewing publicly available terms of service and other policies and noting that each platform defines, for example, hate speech, in slightly different ways. Finally, those same

2

2.     All documents and communications related to [COMPANY's] current reporting and disclosure obligations under federal and/or state law.

> publicly available policies make clear who is and who is not allowed on the platform (without implicating any trade secret concerns).

2.     All documents and communications related to [COMPANY's] current reporting and disclosure obligations under federal and/or state law.

> Defendant has not shown why it is necessary to inquire into other disclosure requirements, when Plaintiffs assert that H.B. 20 requires members to disclose their *editorial* policies to the satisfaction of the Texas Attorney General—*legal* injuries chilling their exercise of editorial discretion. *See* PI Motion at 6-13, 23-36; Dkt. No. 28 at 6 ("Response to MTD"); *cf.* Resp. Br. at 4.

3.     Offline copies of all git repositories, including version and commit history, related to content moderation.

> Defendant has not demonstrated why this is necessary, as he contends that he must see every version of Plaintiffs' members underlying code to determine whether the platforms moderate content—when the platforms' publicly available policies demonstrate as much. *Cf.* Resp. Br. at 4.

4-7.

> Training data sets for all machine learning models employed for purposes of content moderation to the extent they are not contained in documents produced in response to No. 3.
>
> All wiki, README, or similar documentation related to software utilized for content moderation from 2019-present.
>
> Any issues, user stories, epics, tasks, themes or initiatives* created in relation to content moderation of your platform. [*To the extent the respondent requires keywords to comply with this request, respondent should confer with Defendant on those keywords].
>
> Current workflow diagrams to the extent they are not contained in documents produced in response to No. 3.

> Defendant has not explained why this information is necessary, instead contending (in essence) that he must have access to this information to know whether platforms are moderating content, or "doing something else entirely." *Cf. id.* at 3-4. As an initial matter, Defendant does not explain what that "something else" includes. Moreover, just as Defendant does not need Plaintiffs' members' code, he does not need to see the precise technical way that the code has been developed. Defendant's argument relies on the idea that this Court can tell the platforms that the platforms are exercising their editorial discretion incorrectly.

8.     All documents and communications containing studies, inquiries and/or statements as to advertiser retention being affected by user content allowed on [COMPANY's] platform.

> Again, Defendant has not explained why this information is necessary to respond

to the motion to dismiss. *Cf. id.* at 6. And he has not justified his request for "all documents and communications."

Defendant's requests are improper under even the normal rules of discovery, let alone in the expedited nature of this limited discovery period related to the preliminary injunction. Instead, to get Defendant the information he "needs to prepare [the] opposition to the PI motion," Order at 4, Plaintiffs offered (and Defendant seemed to agree to) the plan proposed above that would allow discovery into the facts put at issue in Plaintiffs' motion for preliminary injunction.

Defendant offers *no* argument why Plaintiffs' proposed discovery plan is insufficient, instead demanding millions of documents from all covered members—the need for which is completely belied by Defendant's own negotiations last week. Defendant has demonstrated that, even under his expansive (and erroneous) view of what discovery is necessary at this stage of the case, Defendant's current requests are overbroad and unnecessary. By the end of the process, Defendant was willing to seek depositions and documents from only *two* of Plaintiffs' members: Facebook and YouTube. And Defendant was willing to forgo 4 of 9 proposed requests for production. In other words, although Defendant now contends that he requires many millions of documents from all of Plaintiffs' covered members to defend against Plaintiffs' preliminary-injunction motion, he was willing to do without much of that as of last Thursday.

Furthermore, Defendant has made no attempt to limit his discovery requests to the needs of this case. As this Court has explained in another case, "because this is a facial challenge to the [state statute], it is unlikely that the proceedings will be fact intensive or that [Plaintiffs'] individual members will be required to participate in this lawsuit." *Nat'l Press Photographers Ass'n v. McCraw*, 504 F. Supp. 3d 568, 580 (W.D. Tex. 2020); *see* PI Motion at 7-9; Resp. to MTD at 12-18 (explaining why this case does not require member participation). And Defendant has done nothing to respond to the First Amendment concerns, except to assert that Plaintiffs cannot raise

4

such concerns. *See* Dkt No. 20 at 9-10.

But this dispute over the scope of expedited discovery is governed by this Court's Order granting limited expedited discovery. Specifically, the Court ordered "*the parties*" "to reach agreements about the breadth and timing of any such discovery"—and further ordered that "to the extent *the parties reach an impasse*, the parties shall be aware the Court will rule swiftly" on the dispute between the parties. Order at 4 (emphases added). In other words, this Court did not approve general discovery in this case—especially after Defendant unilaterally ended negotiation to serve multiple third-party subpoenas. *Cf.* Fed. R. Civ. P. 26(d)(1) (parties generally must wait until after a Rule 26(f) conference to conduct discovery). Instead, the Court ordered limited discovery meeting with the terms of the Court's Order—*i.e.*, "narrowly tailored" and "targeted requests" for "precise information." *Id.* Because Defendant has not provided such requests, he is not entitled to discovery under the terms of this Court's order.

Under this Court's Order, Plaintiffs have standing to seek a protective order (or to otherwise challenge Defendant's subpoenas in this expedited-discovery posture). None of the cases Defendant cites include First Amendment challenges brought by organizations on behalf of their members—where the organizations represent their members' interests in the litigation, as recognized in myriad cases upholding associational standing. Response to MTD at 12-15. Moreover, Plaintiffs have asserted that their "own interest[s] [are] jeopardized by discovery sought from a third person," given the expedited nature of the discovery here and Plaintiffs' request for relief before H.B. 20 takes effect. 8A Charles Alan Wright & Arthur P. Miller, Fed. Prac. & Proc. Civ. § 2035 (3d ed.).

## CONCLUSION

Plaintiffs respectfully request that this Court grant Plaintiffs' motion and enter the accompanying protective order.

Dated: November 1, 2021                     Respectfully submitted,

|  |  |
|---|---|
| | */s/ Scott A. Keller* |
| Steven P. Lehotsky* | Scott A. Keller (Texas Bar # 24062822) |
| steve@lehotskykeller.com | scott@lehotskykeller.com |
| Jonathan D. Urick* | Matthew H. Frederick (Texas Bar # 24040931) |
| jon@lehotskykeller.com | matt@lehotskykeller.com |
| Jeremy Evan Maltz (Texas Bar # 24102129) | Todd Disher (Texas Bar # 24081854) |
| jeremy@lehotskykeller.com | todd@lehotskykeller.com |
| Gabriela Gonzalez-Araiza* | LEHOTSKY KELLER LLP |
| gabriela@lehotskykeller.com | 919 Congress Ave. |
| LEHOTSKY KELLER LLP | Austin, TX 78701 |
| 200 Massachusetts Avenue, NW | T: (512) 693-8350 |
| Washington, DC 20001 | F: (833) 233-2202 |

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2021, the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Todd Disher*
Todd Disher