IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **NETCHOICE, LLC, et al.,**<br>*Plaintiffs,*<br><br>v.<br><br>**KEN PAXTON, in his official capacity as Attorney General of Texas,**<br>*Defendant.* | Civil Action No. 1:21-cv-00840-RP |

**DEFENDANT'S OPPOSED MOTION FOR STAY PENDING APPEAL**

Defendant Ken Paxton, in his official capacity as Attorney General of Texas ("Attorney General"), files this Motion to Stay the District Court's Order granting Plaintiff's Motion for Preliminary Injunction (Dkt. 51) (referred to as "Preliminary Injunction" or "Order") pending appeal or, alternatively, requests an order suspending the issued injunction pending appeal pursuant to Fed. R. App. P. 8(a).

The Court's opinion addresses legal issues that are a matter of first impression for the Fifth Circuit and the Supreme Court. This Court held that social media platforms are not common carriers in their function as hosts of third-party user-generated content. The Court also held that any algorithm claimed to be used for "content moderation" constitutes speech. The Attorney General has raised substantial arguments on the merits of numerous serious legal questions implicated by this Court's Preliminary Injunction, and a stay pending appeal is warranted to permit the Fifth Circuit to assess the merits of this Court's novel rulings.

A stay is also supported by the widely recognized principle that enjoining a state law inflicts irreparable harm on the state, and that the public's interest is aligned with the state's interest and harm. Plaintiffs, in contrast, will not be irreparably harmed if a stay is granted. This is evidenced

by the fact that (1) their supportive members stated they either already comply with aspects of the law or could not explain how the law would be burdensome in practice; and (2) Plaintiffs' other members, filing as amici in opposition to the Preliminary Injunction, have demonstrated no harm will occur by enforcement of H.B. 20. For all these reasons, as further set forth below, a temporary stay while the Fifth Circuit considers the merits of this Court's Preliminary Injunction is warranted.

**ARGUMENT**

## I. LEGAL STANDARD

A party must ordinarily file a motion for stay in the district court seeking a stay of a judgment or order pending appeal or seeking an order suspending an injunction while an appeal is pending before seeking relief from the Fifth Circuit. Fed. R. App. P. 8(a)(1). "The Supreme Court has repeatedly stated that a four-factor test governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"[1]

The Fifth Circuit "has refused to apply these factors in a rigid, mechanical fashion," and has "held that the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits.[2] A stay is especially

---

[1] *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).
[2] *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981)).

warranted when existing case law does not provide clarity or guidance in resolving the serious legal questions involved.³ A stay pending appeal "simply suspend[s] judicial alteration of the status quo," so as to allow appellate courts to bring "considered judgment" to the matter before them and "responsibly fulfill their role in the judicial process."⁴

Similarly, Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction."⁵ The same four factors delineated above are considered when determining whether to suspend a preliminary injunction while an appeal is pending from the order granting the injunction.⁶

## II. A Stay Pending Appeal is Warranted Given the Serious, Novel Legal Questions at Issue that Have Never Been Considered by the Fifth Circuit or Supreme Court.

### A. Defendant Has Raised Serious Legal Questions That Merit a Stay Pending Appeal.

The Attorney General has raised a substantial case on the merits regarding the serious legal questions of standing, which go to the heart of whether this Court had subject-matter jurisdiction to consider Plaintiffs' claims at all. The Attorney General has also raised questions never considered by the Fifth Circuit or the Supreme Court as to common carriage and the First Amendment. Correspondingly, the Attorney General has demonstrated a likelihood of success on the merits regarding Plaintiffs' claims. While this Court may have rejected the Attorney General's

---

³ *Texas v. Ysleta Del Sur Pueblo*, 2019 WL 5589051 (W.D. Tex. March 28, 2019) (district court granting stay given serious legal question raised and lack of clarity or guidance from existing caselaw).
⁴ *Nken v. Holder*, 556 U.S. 418, 427, 429 (2009) (internal quotation marks omitted).
⁵ Fed. R. Civ. P. 62(d).
⁶ *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).

arguments, it did so by relying on readily distinguishable First Amendment case law and giving dispositive weight to a novel "fact": whether the entity "screen[s] and sometimes moderate[s] or curate[s]" user generated content.[7]

Therefore, given the novel nature of Plaintiffs' claims and the substantial support for the Attorney General's arguments, the Court of Appeals should have an opportunity to consider these issues before the injunction is implemented. The Attorney General's significant jurisdictional and merits arguments raise serious legal questions that support staying this Court's Preliminary Injunction pending appeal.

1. *Plaintiffs Lack Standing.*

As in every case, standing is indispensible. Here, respectfully, the Court finding that Plaintiffs have associational and organizational standing is highly questionable. This Court first erred in reaching this conclusion by considering the standing issues based solely on the allegations in the Complaint. Defendant incorporated his standing arguments in response to the Preliminary Injunction Motion and supplemented his arguments with the depositions of Plaintiffs and the Platforms that directly contradicted the Complaint.[8] Thus, it was not appropriate for this Court to "'construe the complaint in favor of the complaining party.'"[9] Defendant clearly made a factual attack on Plaintiffs' claims of standing. Given this, "*no* presumptive truthfulness attache[d] to plaintiff[s'] allegations" and this Court was required to "weigh the evidence and satisfy itself as to the existence of its power to hear the case."[10] But not a single citation to the depositions taken in

---

[7] Dkt. 51 at 15.
[8] Dkt. 39 at 55.
[9] Dkt. 51 at 7.
[10] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

this case appears in this Court's analysis.[11] Nor does any reference to anything other than Plaintiffs' broad allegations in their Complaint. This is not the proper standard of review when determining whether Plaintiffs have met their burden to prove jurisdiction.[12] Under the proper standard of review for the factual attack that was made on Plaintiffs' Complaint, it is clear Plaintiffs lack both associational and organizational standing to proceed.

i. Associational Standing.

This Court's Order fails to recognize that Plaintiffs do not satisfy two of the elements necessary to have associational standing to assert their claims. First, Plaintiffs never demonstrated a cognizable injury suffered by any of their members. This is evidenced by this Court's reliance on the vague, unsupported assertion that Section 7 of H.B. 20 would cause the platforms to be "compelled to publish content that violates their policies and otherwise would be removed through their exercise of editorial judgment."[13] And the alleged injury based on Section 2 of H.B. 20 fares no better where the only claim was the Platforms would be "forced to disclose technical information that will cost them competitive advantage and make it harder to block content."[14] As Defendant explained at the hearing, there was no way to know these conclusory claims are true: Plaintiffs has not submitted any evidence to that effect. As the depositions on the record clearly show, neither Plaintiffs nor their declarants were able to provide, with any amount of specificity, an explanation as to how H.B. 20's provisions necessarily compel such action.

---

[11] Dkt. 51.
[12] *See Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014); *see also Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) (holding the district court is "duty-bound to examine the basis of subject matter jurisdiction sua sponte.").
[13] Dkt. 51 at 8 (citing Dkt. 1 at 6).
[14] *Id*. at 9 (citing Dkt. 1 at 7-8).

Second, it is antithetical to the relief Plaintiffs have sought in this suit to declare their members need not participate at all. This Court bases this conclusion on the supposition that "Plaintiffs seek to block the State's enforcement of the provisions of HB 20 that are facially unconstitutional."[15] Tellingly, there is no citation to Plaintiffs' Complaint for this contention.[16] Nor could there be given the Complaint seeks as-applied relief.[17] But even to the extent this is now true, it does not obviate the need for extensive discovery from the Platforms. After all, this Court will be required to consider an as-applied challenge when Plaintiffs inevitably fail to show H.B. 20 is "impermissibly vague in all of its applications."[18] And the Platforms nonetheless must participate in this suit given that Plaintiffs have attested to lacking the knowledge as to how each of the Platforms' content moderation practices work or how they would be burdened by disclosures under Section 2.

ii. Organizational Standing

The holding that Plaintiffs have organizational standing to pursue this suit is just as questionable. This Court's sole reliance on Plaintiffs' claim that they will have to divert *some* resources to pursue this litigation is contrary to the jurisprudence on this issue.[19] This holding ignores that "[i]t is *fundamental* that no plaintiff may claim as injury the expense of preparing for litigation, for then the injury-in-fact requirement would pose no barrier."[20] Additionally, far from the low standard articulated that a party has organizational standing even if the injury is neither "large" nor "substantial,"[21] the Fifth Circuit requires a "diver[sion] [of] *significant* resources to

---

[15] Dkt. 51 at 9.
[16] *See id.*
[17] Dkt. No. 1 (Complaint) at 47.
[18] *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982).
[19] Dkt. 51 at 10-11.
[20] *OCA-Greater Houston v. Tex.*, 867 F.3d 604, 611 (5th Cir. 2017).
[21] Dkt. 51 at 11.

counteract the defendant's conduct."[22] This is because "[n]ot every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact."[23] Thus, it was "insufficient to impart standing upon [Plaintiffs]," by virtue of this Court's acknowledgement of "[t]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party.'"[24] Plaintiffs are lobbying firms that pursue litigation as one way to meet their stated goals.[25] Activities that do not differ from the organization's "routine" activities do not confer standing.[26] That Plaintiffs' ability to identify a "trifle"[27] cannot suffice – their burden was to demonstrate a "*drain* on the organization's resources—constitut[ing] far more than simply a setback to the organization's abstract social interests."[28] Because Plaintiffs failed to meet this burden, a stay pending appeal is justified.

### 2. *Plaintiffs' Claims Lack Merit Necessary to Justify a Stay*.

Defendant is entitled to a stay because the Order fails to identify any proper basis for concluding that H.B. 20 violates the First Amendment.

*First*, this Court's Order overlooks that the Platforms are not "speakers" when they merely host content and so do not have a First Amendment right to eliminate various viewpoints from their platforms.[29] Indeed, federal law specifically says the Platforms are not speakers, and are not engaged in any of their own expressive activity, when they host content. That is why they are

---

[22] *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010) (emphasis added).
[23] *Id.*
[24] *Id.* (quoting *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000)).
[25] Dkt. No. 1 ¶¶1-2.
[26] *Id.* at 238.
[27] Dkt. 51 at 11.
[28] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).
[29] *Rumsfeld v. Forum for Academic and Institutional Rights*, 547 U.S. 47 (2006); *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980).

protected, for example, from defamation suits for content posted by third parties.[30] The Platforms have relied on this protection time and again to defeat attempts to hold them liable for content posted by others.[31] If—contrary to fact—the Platforms have truly been "editing" third party content all along, then all of these cases were wrongly decided and the Platforms should have been held liable in every instance. After all, they lose their liability protection if they are "responsible, in whole *or in part*, for the creation *or development* of information provided" on their sites.[32]

*Second,* this Court's Order ignores the historical precedent that dictates the factual inquiry necessary to the common carrier issue, choosing, instead, to rely on a new test of whether the industry "screens" content and sometimes moderates it.[33] Given that industries, such as FedEx – which screens packages for dangerous and illegal content[34] – or airlines – which screen passengers via TSA agents prior to their entry onto their aircrafts – have been deemed common carriers despite the same practices, this Court's new factual inquiry operates as a fundamental deviation from common carriage jurisprudence.

*Third*, reliance on *Tornillo*, *Hurley*, and *Pac. Gas & Elec. Co.* to substantiate the Platforms' vague assertions that they use editorial judgment is misplaced. *Tornillo* cannot be similar because the Platforms are nothing like the newspaper in that case that was held, based on evidentiary support, to be receiving and reviewing and choosing content *before* it was published.[35] Plaintiffs here provided no evidence that the Platforms pre-screen user-generated content as newspapers do. Neither *Hurley* nor *Pac. Gas & Elec. Co.* can have any bearing on this Court's analysis either; *Hurley*

---

[30] 47 U.S.C. § 230(c)(1).
[31] *See, e.g.*, *Caraccioli v. Facebook*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016).
[32] 47 U.S.C. § 230(f)(3); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)
[33] Dkt. 51 at 15.
[34] https://www.fedex.com/content/dam/fedex/us-united-states/services/SG_TermsCond_US_2019.pdf.
[35] *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974).

involved a state law that forced organizers of a "parade"—"a form of expression"—to include participants whose message they disagreed with.[36] And *Pac. Gas & Elec. Co.* involved a law that forced an entity that did not host others' speech *at all* to disseminate one very specific viewpoint-oriented statement.[37] Most contrastingly, however, is the fact that none of these three cases involved industries that received the significant government benefits that the Platforms do, primary among them being the insulation from liability for the content they host.[38] Thus, to compare industries that *are* held liable for the speech they publish with those that are merely a forum[39] for speech of others can only lead to an incorrect result that justifies a stay of the Court's Order.

*Fourth*, H.B. 20 is not content-based simply because it contains exceptions or is limited to social media platforms with more than 50 million users. The Court's Order is silent as to how H.B. 20 "on its face" draws distinctions based on the message a speaker conveys.[40] Instead, it relies on a belief that the viewpoints for which H.B. 20 seeks to provide equality will likely affect some content and speakers – conservative leaning – more than others. But "a facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics."[41] The answer to the one question this Court should have posed - "whether the law is

---

[36] *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*, 515 U.S. 557, 568 (1995).
[37] *Pacific Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 12 (1986).
[38] 47 U.S.C. § 230.
[39] This Court balks at the State's characterization of the Platforms as public forums. Dkt. 51 ("social media platforms are privately owned platforms, not public forums."). This characterization, however, is entirely consistent with the federal statute whose benefits the Platforms enjoy. *See* 47 U.S.C. § 230(a)(3) (emphasis added) ("The Internet and other interactive computer services offer a **forum** for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity."). It is also inconsistent with the Supreme Court's characterization of these Platforms as our "modern public square" in their functions as hosts of user-generated content. *Packingham v. North Carolina*, -- U.S.--, 137 S. Ct. 1730, 1735 (2017).
[40] *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).
[41] *McCullen v. Coakley*, 573 U.S. 464, 480 (2014).

'justified without reference to the content of the regulated speech'" – is clearly yes.[42] H.B. 20 does no more than prohibit discrimination based on viewpoint. There is no reason to deviate from the standard that "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content-neutral."[43]

That H.B. 20 expressly defines social media platforms as, in part, those with 50 million users or more is also not a basis for a finding that H.B. 20 is speaker-based. As was explained at the hearing, H.B. 20 targets common carriers as that doctrine has been historically applied. Smaller social media platforms do not necessarily meet all of these historical markers, thanks, in part to the Platforms that H.B. 20 does cover. H.B. 20's limitation based on number of users says nothing about the content of the platforms being regulated or of their speakers. Under *Ward v. Rock Against Racism*, that fact is dispositive.[44]

*Fifth*, nothing in First Amendment jurisprudence requires the narrow tailoring demanded of the State in the Court's Order. Plaintiffs argued, and this Court agreed, that H.B. 20 could not be narrowly tailored because the option existed for the State to create its own social media platform. No case supports the proposition that a State cannot regulate a common carrier because it can instead pursue the option of *becoming* a common carrier. If this option truly precluded such regulation, then the Supreme Court erred in the canonical *Turner* cases because it failed to instruct Congress to create its own cable systems instead of regulating those that already existed.[45] Demanding such action from the State is undisputedly the "least restrictive" means that could be

---

[42] *Id.*
[43] *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 64 (1994).
[44] 491 U.S. 781, 791 (1989) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.").
[45] *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994); *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180 (1997).

required of it, which ignores the fact that "narrow tailoring *does not require* that the least restrictive means be used."[46] All Defendant had to show was that H.B. 20 "promotes a substantial governmental interest that would be achieved less effectively without the restriction."[47] The government's interests in "preventing deception to consumers," ensuring the free and unobstructed use of public forums, and "provid[ing] individual citizens effective protection against [discriminatory] practices," have been recognized by all but this Court.[48] H.B. 20 is narrowly tailored to those social platforms who threaten those interests.

*Sixth*, this Court's Order utilizes an inordinate amount of citations from Governor Abbott, Attorney General Paxton, and the Twitter account of one senator to support a claim that H.B. 20 was enacted to discriminate against Platforms that do not currently promote conservative speech.[49] The reliance on those sources to demonstrate legislative intent cannot succeed. This reasoning is foreclosed by *United States v. O'Brien*. There, the Supreme Court rejected the plaintiff's attempt to mine the legislative history of a federal statute, challenged on First Amendment grounds, that prohibited the burning of draft cards.[50] In concluding that such a free-floating inquiry into legislative purpose had no proper place in the First Amendment analysis, the Court held that "[i]nquiries into congressional motives or purposes are a hazardous matter," particularly where a court is "asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it."[51] That is because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores

---

[46] *Ward*, 491 U.S. at 798.
[47] *Serv. Employees Intern. Union, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010).
[48] *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249-50 (2010); *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 650 (1981); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979).
[49] Dkt. 51 at 1-2, 8, 16, 23-24, 28.
[50] 391 U.S. 367, 383-86 (1968).
[51] *Id.* at 383-84.

of others to enact it."⁵² Here, neither Plaintiffs nor this Court went so far as to even mine the legislative history, which would nonetheless be unconvincing under *O'Brien*. Finding H.B. 20 to be content- or speaker-based simply because three individual politicians tweeted about their support of the law is not supported by any understanding of First Amendment jurisprudence.

### B. The Injunction is Vague and Overbroad.

An injunction must be specific in its terms and describe in reasonable detail the act or acts to be restrained without reference to the complaint or any other documents.⁵³ The scope of relief must also be limited to the legal violation found, and "an injunction is vague if it does not comply with the specificity requirements in Rule 65(d), and is overbroad if it is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue."⁵⁴ Defendant's appeal challenges the substance and breadth of this Court's Preliminary Injunction, which presents an independent basis upon which Defendant has substantial arguments raising serious legal questions that are likely to prevail on appeal.

The injunction is overbroad because it exceeds the violations that the Court found and because it is not limited to the least intrusive means of remedying those violations. The Supreme Court has explained that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."⁵⁵ "[T]he States must be equally free to engage in any activity. . . . no matter how unorthodox or unnecessary anyone else—including the

---

⁵² *Id.* at 384; *see also Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("[j]udicial investigation of legislative history has a tendency to become . . . an exercise in looking over a crowd and picking out your friends").
⁵³ Fed. R. Civ. P. 65(d); *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.20 (5th Cir. 1975).
⁵⁴ *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (per curiam) (cleaned up).
⁵⁵ *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (emphasis added).

judiciary—deems state involvement to be."[56] In making decisions that protect their citizens, officials "should not be subject to second-guessing by an unelected federal judiciary."[57]

Respectfully, this Court's Preliminary Injunction failed to afford the State the deference to which it is entitled in passing laws that protect its citizens from discrimination, deception, and obstructed public forums. It is also not narrowly tailored to this Court's findings. This Court struck down the entirety of Sections 2 and 7 in H.B. 20 despite Plaintiffs' failure to demonstrate how each provision therein was unconstitutional. And it did so on a finding of "facial unconstitutionality" despite the fact that a number of Plaintiffs' members have briefed to the Court why H.B. 20 does *not* burden or chill their speech. In other words, H.B. 20 is not unconstitutional in all its applications.

Additionally, regarding the disclosure requirements of Section 2, this Court's Preliminary Injunction could have been far more narrowly tailored. This Court declared the Platforms do not have to comply with *any* provision in Section 2 for the foreseeable future by citing to Neil Potts' vague claim that it would be "'impossible' for Facebook 'to comply with anything by December 1, [2021].'"[58] This quotation not only fails to identify what in H.B. 20 cannot be complied with, but it also ignores that Facebook acknowledged they already engage in *several* of the business practices required by Section 2 *and* they do so within the deadlines imposed.[59] This Court's Order ignoring this evidence in favor of the broadest possible injunctive relief merits a stay.

---

[56] *Garcia v San Antonio Metro. Trans. Auth.*, 469 U.S. 528, 546 (1985).
[57] *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (cleaned up); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 74 (2020) (Kavanaugh, J., concurring) (while not abdicating their roles, federal courts nevertheless "must afford substantial deference to state and local authorities about how best to balance competing policy considerations during the pandemic")
[58] Dkt. 51 at 22.
[59] Dkt. 39-2 at 100:1-102:4; 111:6-19.

## C. Defendant Will Be Irreparably Harmed.

Enjoining State officials from carrying out validly enacted laws imposes irreparable harm.[60] Here, the injunction inflicts an "institutional injury" from the "inversion of . . . federalism principles."[61] Federalism principles recognize that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."[62] The constitutional principle of sovereignty does not exist solely for the sake of protecting state officials. Instead, the "ultimate purpose" of the structural provisions of the Constitution and of guarding state sovereignty "is to protect the liberty and security of the governed."[63] The State has an interest in enforcing its laws, and the status quo should be maintained throughout the pendency of an appeal.

## D. The Balance of Equities Weighs in Favor of Granting a Stay.

A temporary stay of the Preliminary Injunction will not irreparably harm Plaintiffs, because, as common carriers, the Platforms are not entitled to discriminate against their users nor avoid regulation of their discriminatory practices by the State. This is compounded by Plaintiffs alleging only a speculative threat of harm to the Platforms in the absence of an injunction. Any Platform choosing not to comply with H.B. 20 d while the Preliminary Injunction is stayed, where they have known its effective date for months and given no specific reason why they cannot do so, would be

---

[60] *Maryland v. King*, 567 U.S. at 1303; *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").
[61] *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016).
[62] *Maryland*, 567 U.S. at 1303 (alterations omitted) (Roberts, C.J., in chambers).
[63] *Metro. Wash. Air-ports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272 (1991).

a self-inflicted injury, and the Fifth Circuit has expressly recognized that "a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted."[64]

While there is no appreciable chance that the Platforms will be harmed if the Preliminary Injunction is stayed pending appeal, the irreparable harm the Preliminary Injunction inflicts on the public interest and the State tip the balance of harms sharply in favor of a stay. When the State seeks a stay pending appeal, "its interest and harm merge with that of the public."[65]

## Conclusion

The Attorney General has raised substantive and meritorious issues with this Court's Preliminary Injunction that encompass serious legal questions. The Fifth Circuit should be provided an opportunity to review the merits of this Court's decision before Texas's law is enjoined and the State—and corresponding public interest—irreparably harmed. For the foregoing reasons, Defendant respectfully requests that the Court grant this motion expeditiously.

Respectfully Submitted.

**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

**Grant Dorfman**
Deputy First Assistant Attorney General

**Shawn Cowles**
Deputy Attorney General for Civil Litigation

---

[64] *State v Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (citing 11A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2021); *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) ("[S]elf-inflicted wounds are not irreparable injury."); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) ("If the harm complained of is self-inflicted, it does not qualify as irreparable.").
[65] *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (citation omitted).

**THOMAS A. ALBRIGHT**
Division Chief
General Litigation Division

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Attorney-in-Charge
Assistant Attorney General
Texas State Bar No. 24097533
*courtney.corbello@oag.texas.gov*

**CHRISTOPHER D. HILTON**
Counsel of Record
Assistant Attorney General
Texas State Bar No. 24087727
christopher.hilton@oag.texas.gov

**BENJAMIN STOREY LYLES**
Counsel of Record
Assistant Attorney General
Texas State Bar No. 24094808
benjamin.lyles@oag.texas.gov

**BENJAMIN S. WALTON**
Counsel of Record
Assistant Attorney General
Texas State Bar No. 24075241
benjamin.walton@oag.texas.gov

General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 936-2109
**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**
I certify that on December 6, 2021 the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.
*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General

**NOTICE OF ELECTRONIC FILING**

I, certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the United States District Court for the Western District of Texas, on December 6, 2021.

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General

**CERTIFICATE OF CONFERENCE**

I certify that on December 6, 2021 I conferred with counsel for Plaintiffs regarding the relief requested above. Counsel informed me that Plaintiffs are opposed.

*/s/ Courtney Corbello*
**COURTNEY CORBELLO**
Assistant Attorney General